J. LYONS, Appellee, v. FARM PROPERTY MUTUAL INSURANCE ASSOCIATION OF IOWA, Appellant.

INSURANCE: Reformation of Application. The copy of the application actually attached to the policy may not be *reformed* in an action on the policy. (Sec. 1741, Code, 1897.)

INSURANCE: Proofs of Loss—Invalid Requirement. Provisions of a policy which require proofs of loss in addition to those required by statute are invalid. (Sec. 1742-a, Code Supp., 1913.)

PRINCIPAL AND AGENT: Proof of Agency. Agency may be proven by the testimony of the agent.

EVIDENCE: Opinion Evidence—Death from Lightning. One familiar with the condition and appearance of the hide of an animal killed by lightning may testify, on stated facts, whether the animal was so killed.

INSURANCE: Death from Lightning—Evidence. Evidence of the actions of animals and of the symptoms developed is admissible on the issue whether the animals were killed by lightning. Evidence held to present a jury question.

*Appeal from Guthrie District Court.*—GEORGE B. LYNCH, Judge.

FEBRUARY 18, 1920.

ACTION on a certificate of insurance resulted in judgment against the defendant, from which it appeals.—*Affirmed.*

*George Wambach* and *Sayles & Taylor,* for appellant.

*Carl P. Knox,* for appellee.

LADD, J.—The defendant is a mutual insurance association, organized under Chapter 5 of Title IX of the Code. A certificate of membership was issued to plaintiff, insuring his horses, mules, and colts against loss from lightning and other casualties, to the amount of $600, and his cattle against loss by lightning and other casualties to the amount of $500, for five years, beginning December 19, 1917. The plaintiff claims that a horse of the value of $100 and a cow of like value were struck by lightning about August 6, 1918, and, as defendant refused payment, he brought this action to recover the value of said animals, less $16.10, payable to defendant as his annual assessment. The defendant pleaded that, in the application for insurance, the amount recoverable on each animal was not inserted,—that is, the application limited the insurance to $100 per head on horses and $75 per head on cattle; but neither "the $100 on horses" nor "the $75 on cattle" was inserted in the blank space left therefor in copying the application on the certificate.

I. The defendant alleged that this omission was through the mistake or inadvertence of one of its clerks, and prayed that the application might be reformed, so as to show the said amounts. The association was required, under Section 1741 of the Code, to attach "a true copy" of the application, and its omission so to do precluded it from pleading or proving the application or any part thereof, as a basis for any defense it might interpose. With the important limitations of the amounts of indemnity entirely omitted, it seems needless to say that the copy of the application attached to the certificate was not a true copy. This being so, the consequence of such failure to attach a true copy, clearly defined in the statute, may not be defeated by reformation. Whether the correction might be made, so as to prove effective as to subsequent clauses, there is no occasion for determining. It is enough to say now that,

1. INSURANCE: reformation of application.

under the statute, the defendant was "precluded from plead-
ing, alleging, or proving any such application or representa-
tions, or any part thereof, or falsity thereof, or any parts
thereof, in any action upon such policy." There was no
error in sustaining the motion to strike this portion of the
answer.

II. The motion to strike also asked that there be strick-
en that portion of Section 12 of its by-laws providing that,
"where the carcass of said animal claimed to be killed by

lightning shall be disposed of before the
2. INSURANCE: adjuster can view it, the owner shall have
proofs of loss: it examined by two disinterested parties for
invalid require-
ment.          marks of lightning, both without and under
the skin, and report their sworn statements to the associa-
tion," and alleged that plaintiff had not complied there-
with. Section 1742 of the Code, relating to loss of a build-
ing, was amended by adding thereto Section 1742-a of the
Code Supplement, 1913:

"In furnishing proofs of loss under any contract of in-
surance for damages or loss of personal property it shall
only be necessary for the assured, within 60 days from the
time the loss occurs, to give notice in writing to the com-
pany issuing such contract of insurance accompanied by
an affidavit, stating the facts as to how the loss occurred, so
far as same are within his knowledge, and the extent of the
loss, any agreement or contract to the contrary notwith-
standing."

Plainly enough, this precludes any requirement of
proofs of loss other than those specified. Appellant argues,
however, that this conclusion is obviated by Section 1743
of the Code Supplement. That relates to "any condition
or stipulation in an application, policy or contract of in-
surance, making the policy void before the loss occurs,"
or suspending it during default, and some other matters,

including the invalidity of specified agreements.  Contained therein is a provision that:

"Nothing herein shall be construed to change the limitations or restrictions respecting the pleading or proving of any defense by any insurance company to which it is subject by law."

The section previously quoted is a part of the law, and, of course, in that event, the defendant might not set up, by way of defense, that the proofs of loss exacted by the contract, in addition to those provided by statute, constituted a defense.  Moreover, Section 1744 of the Code Supplement, in fixing the time in which proofs of loss shall be furnished and suit begun, contains this clause:

"No provisions of any policy or contract to the contrary shall affect the provisions of this and the three preceding sections."

In restricting the proofs of loss which might be exacted, the legislature evidently designed to avoid the defeat of insurance contracts by defining the proofs which may be required. *Kinney v. Farmers' Mut. F. & Ins. Soc.*, 159 Iowa 490.  We are of opinion that the portion of the by-law quoted was invalid, and that the failure of the plaintiff to furnish the proof therein specified did not constitute a defense.  There was no error in striking this portion of the answer.  Doubtless, the questions here considered should have been raised by demurrer; but, if so, the motion may be treated as such.  There was no error in sustaining the motion.

III. Several rulings on the admissibility of evidence are complained of.  Stemm was asked whether he was agent of defendant at the time the certificate of membership was issued.  An objection as incompetent, in that the agency might not be proved by the declarations of the agent, was rightly overruled.  He was competent as a witness, and

3. Principal and Agent: proof of agency.

proof of any declarations made by him was not offered. The rule that agency may not be proven by the alleged agent's declarations does not preclude the establishment of such agency by the agent's testimony. *O'Leary Bros. v. German-American Ins. Co.,* 100 Iowa 390; *Schlitz Brewing Co. v. Barlow,* 107 Iowa 252; *Brown v. Rockwell City Canning Co.,* 132 Iowa 631. This disposes of other rulings dependent upon a prima-facie showing of the agency of Stemm.

IV. Rose testified that he had been engaged in the business of butcher 12 years, and had occasionally bought hides of horses and cattle struck by lightning, and, with reference thereto, testified that the effect on the hide was the same as any other burn; that 4. EVIDENCE: opinion evidence: death from lightning. it "hardens the hide and curls the hair, as a rule;" and that the hide would break after being salted; that he had examined the hide of the cow in question, which he had purchased of plaintiff in August, and found a burned spot about 4 inches in front of the left hip, and running to the flank. He was then asked:

"Q. This spot that you observed on the hide,—was that caused by lightning, in your opinion?"

This was objected to, for that the witness had not shown himself qualified to express an opinion, and the objection was overruled. He answered in the affirmative. The testimony recited, if true, qualified the witness to answer; for he had stated that he had examined hides injured by lightning. The objection to his competency was rightly overruled. He testified, on cross-examination, however, that he didn't know personally that the hides he had examined were of animals killed by lightning; but there was no motion to strike his former answer, and, of course, what he testified to on cross-examination did not obviate the correctness of the previous ruling when made.

V. Defendant challenges the sufficiency of the evidence to carry the issues to the jury, and now insists that its mo-

tion to direct the verdict should have been sustained. Plain-
tiff testified, in substance, that the cow
and horse appeared to be in good condition,
the night previous; that he slept on the
porch until 12 o'clock, when he noticed a
cloud coming up, and, waking up, noticed that "it kind of
commenced blowing, and I heard the thunder, and I looked
to the northwest and saw a cloud coming up, and I watched
it, and it commenced thundering and lightening, and I went
into the house, and immediately after, a clap of thunder
and lightning came, and a little rain cloud came up, and
thunder and lightning;" that, in the morning, when he went
out, "the cow did not move, appeared to be kind of crazy,
and we let her in, and she stood up there a while, and did
not go anywhere, and the other cattle went off, and I got to
looking around, and found the mare, and she was standing
there, and the other horses had gone away in the pasture;"
that he left them there until noon, and he then took them
to water, and "the cow would not drink, could not walk,
and wiggled around down; and the mare did not know
enough to drink. I put her head down in the tank, and she
drank, and I put the mare in the barn, and left the cow
out." The cow died, the following day. He further testi-
fies that he removed the hide, and it "was kind of like it was
burned;" that this was along the neck, 5 or 6 inches long,
and looked "kind of red;" that, "before I skinned her, you
could not notice nothing." He testified further that the
horse died the 5th or 7th of September following; that he re-
moved the hide; and that the burn on the hide was "along
the neck from the jugular vein down to the point of the
shoulder,—looked about the same as the cow." On cross-
examination, the witness said that the animals "stood there
in a kind of a stupor. * * * When they walked, they
would kind of wiggle around. * * * Q. And they were
feeble? A. Appeared to be. Q. Did they drag their legs

5. INSURANCE:
death from
lightning:
evidence.

when they moved? A. Why, just kind of loose all over."
Stemm, the defendant's agent, testified to having notified.
the company of the loss on October 12th, and to having
seen the horse; that he noticed "a stream of hair that would
not lay down smooth, from its head down to about its
shoulder. The hair would not lay down like the rest. It
was kind of long streak, possibly an inch or so wide at
the head, and came rather to a point about the shoulder."
He further testified that he did not observe "anything ir-
regular in her movement." Rose testified that he had ex-
amined the cow's hide in the presence of several persons;
"found one burned spot. It started in at about 4 inches in
front of the left hip bone, and ran to the flank." He said,
as heretofore stated, that, in his opinion, it was caused by
lightning. On cross-examination, he swore that he did not
think "it could be produced any way, only by a burn;" that
"the spot was about 6 inches at the top, and ran to a point
about 15 inches long; and that the hide at that location was
hard." In *Freeman v. Farmers' Mut. F. & L. Ins. Co.*, 121
Mo. App. 532 (97 S. W. 225), the court ruled that evidence
of the actions of animals and symptoms developed was ad-
missible, as bearing on the issue of whether they were kill-
ed by lightning. In *Cottrell v. Munterville Mut. F. & L. Ins.
Assn.*, 145 Iowa 651, a brood mare was covered by insurance
against lightning, and was found dead in a pasture. The
evidence was conflicting as to whether there was a dark
streak in the flesh, extending from the ear along the neck,
and down the shoulder to the knee, and whether there was
any lightning in the vicinity on the night of her death, and
the decision was that, "as the existence of the streak indi-
cated death by lightning, the verdict could not be disturbed
as not being sustained by the evidence." See, also, *Carpen-
ter v. Security Fire Ins. Co.*, 183 Iowa 1226. Here, the jury
might have found that the animals were alive and in good
condition the night previous; that there was an electric

storm; and that they bore marks the next morning, and were in such condition as that they did not accompany the other stock to the pasture; and we are of opinion that, notwithstanding the possibility of death from some other cause, as suggested in the testimony of a veterinarian, whether they died from a stroke of lightning was rightly left to the jury for decision.

VI. Appellant also complains of the striking of a portion of the answer alleging that plaintiff failed to give the animals medicine, and was careless in their treatment, and that their death was due to his negligence, rather than to injury by lightning. We find no such order in the record. Nor was any evidence adduced, save that no medicine was administered, tending to support these allegations.

Exceptions were taken to four of the instructions. The fifth instruction is in accord with the rulings of this court, with respect to the weight to be given expert testimony in response to hypothetical questions. The objection to the sixth instruction urged, that the evidence was not sufficient to warrant the submission of the issue as to whether the animals were struck by lightning, has been disposed of. The objection to the seventh instruction seems to be that, in enumerating the matters, the jury might consider that the court did not exclude all others. As the jury was sworn to decide the cause on the evidence adduced, such a caution was not essential. Exceptions to the eighth instruction have been disposed of. We discover no error, and the judgment is—*Affirmed.*

WEAVER, C. J., GAYNOR and STEVENS, JJ., concur.