J. L. BALLARD, Appellee, v. CHARLIE BALLARD, Appellant.

No. 44582.

Aᴘʀɪʟ 4, 1939.

Ward Evans and E. A. Smith, for appellee.

Prichard & Prichard, for appellant.

Sᴀɢᴇʀ, J.—Plaintiff and defendant are brothers who inherited from their mother a one-sixth interest each in certain land. A partition suit was commenced by one of the heirs, which proceedings resulted in the appointment of a referee, W. B. Whiting. He thereafter sold the land to the defendant. Thinking himself short of funds to pay the purchase price, defendant sought to get some of his brothers, among them the appellee, to accept his note for their shares. Whiting conducted the correspondence upon which the case largely turns. One of the questions involved, and really the one upon which the case turns, is the question as to whose agent Whiting was during the negotiations.

Plaintiff-appellee was at all times. a resident of Florida; and he had no connection with the transaction other than is disclosed by the exhibits. On October 2, 1931, Whiting wrote to three of the defendant's brothers, including the plaintiff, and advised them that Charlie (defendant) had been in that day and was unable to settle for the deed and would like to get an' ex-

tension of time for a year. The letter further advised that an attorney representing a creditor of another brother was insisting on payment at once and threatening a resale; and that the land at that time would not sell for as much as appellant had paid for it. The letter then continues:

"Would you be willing to allow Charley to pay enough to take care of Frank's share, and then let your share go until he is able to sell some cattle or make payment some other way?

"Charley had some money in our Bank and we were compelled to close a week ago Monday, so that money is tied up for a while.

"If the three boys (among them plaintiff) * * * would be willing to give Charley an extension of a year, it seems to me it would save a lot of costs and in the end you would get more than you would by Williams attorney ordering a resale of the land, which he undoubtedly has the power to do."

On March 30, 1932, Whiting addressed a letter to the defendant-appellant which reads as follows:

"Hess was up today and we went down to George Prichard's and fixed up the land deal. I am holding the money of Lynn's and Billy's here for you as you are to give them notes for this. Out of this amount it will take $598.22 to pay the balance that you owe for the land and house. Shall I now send this balance to the insurance company or send it direct to you?

"If you could come over, we could go over this entire deal with George Prichard, but if you can't come over, just advise whether you want the balance of this money sent to you or to be applied on the mortgage of the Prudential Life. Before sending this money out, it will be necessary to get the receipts from Billy and Lynn, which I have enclosed to them and asked them to return."

Enclosed with this under the same date was a statement to the defendant as to the sale of land which sets up the sale price and other matters and concludes with this: "Amount necessary to deduct from the amounts coming to Lynn and Billy to make up enough to pay for the balance of the land—$598.22."

On May 27, 1932, Whiting again addressed a letter to the defendant as follows:

"I received a letter from Lynn and he inclosed the note that you signed to him. When you are over here he would like the time put in the note and the note signed in ink, so I'll hold it here until you come.

"Lynn says that he did not receive the receipt that I sent you for him to sign. Before we can close the estate it will be necessary to get these receipts from Lynn and Billy. Will you send them out to the boys just as soon as you get this letter? As soon as we get those receipts we can settle up the estate."

This postscript was attached: "Before I settle with you we will have to get the receipts signed from boys."

On July 1, 1932, Whiting again wrote the defendant saying that he had received Billy's (one of the brothers) receipt for the amount of his share and advised of a deduction necessary. (Here follows a list of deductions.) The letter continues:

"Balance due you for which I am enclosing a check

                                           700.51

---

           "Total         $1327.23

"If I had known you weren't coming back soon I'd have sent this to you before.

"Did you ever get Lynn's (plaintiff) receipt?"

Some days before the letter just referred to had been written, plaintiff wrote to appellant. Among other things, he had this to say:

"Charlie your note you sent me was not all filled out. You never wrote in when it was payable and then you should have signed it with pen & ink. Willard wrote me that he sent you a Estate receipt to send me when you sent your note but you failed to send it to me.

"You say you will be down to Whiting soon. So I am sending your note to Willard Whiting. So he can make out a new note for you to sign and if you have that Estate receipt you had better bring it along with you as Willard wants to get things fixed up as soon as he can." (It should be noted that the referee's name was Willard Whiting and his address, Whiting.)

On August 23, 1934, Whiting sent back to plaintiff the note which had been signed by the defendant and which is involved herein, with this letter:

"The lost is found and I am enclosing the Charlie Ballard note that you returned to me. In Iowa lead pencil signature is as good as ink, so I would suggest that you hang on to this." This note is the one in suit.

The jury could have found from the testimony that plaintiff accepted the note, that it was never paid and there was due thereon the full face thereof; that plaintiff signed the receipt to the referee, and that it had been received by the latter. Appellant's first proposition is that the court should have directed a verdict for him, because the appellant never received any consideration; that there was error in failing to enter a judgment notwithstanding verdict, and in refusing to grant a new trial because of the alleged lack of consideration. Appellant is not in a position to complain about the failure of the court to direct a verdict: After that ruling defendant shifted his line of defense by admitting the signature of the note (which he had theretofore denied) and setting up affirmative defenses. This placed the burden of proof on him.

There is no merit in the plea of lack of consideration because the consideration for which plaintiff accepted the note, if he did, was clearly the purchase price of his inheritance in his mother's estate. Appellant cites authorities to the effect that parol testimony may sustain a defense of lack of consideration, *and where the evidence is clear that there is no consideration the presumption of consideration is overcome, and the burden is upon the plaintiff to show that there was consideration therefor.* (Italics ours.) We have already said that the jury could have found consideration for the notes.

Appellant's second proposition is also predicated upon failure of consideration and the court's failure to grant relief on that ground, it being his contention that "said note was signed for the purpose of allowing the defendant to receive credit from the referee upon the purchase price of the property of the plaintiff's distributive share of the proceeds, and that in defendant's settlement with the referee, no credit of any kind was given the defendant for signing of said note or for plaintiff's share in the proceeds, and at the time of the settlement between the referee

and the defendant that the referee still retained the plaintiff's interest in the proceeds in cash.'' This complaint of defendant is probably based on these facts: After defendant had secured the consent of his brothers, including the plaintiff, that they take his note for the purchase price of their shares, he secured a loan from an insurance company which made it unnecessary that he use the amount of plaintiff's share and that the amount remained in the bank after the land transaction had been completed. This was a situation which evoked Whiting's expression in the letter of March 30, 1932, to appellant, as follows:

''I am holding the money of Lynn's and Billy's here for you as you are to give them notes for this. Out of this amount it will take $598.22 to pay the balance that you owe for the land and house. Shall I now send this balance to the insurance company or send it direct to you?'' (The rest of the letter has heretofore been quoted.)

What became of the money that was left in the bank is not disclosed by the record. Appellant urges that there was no valid delivery of the note because appellee originally sent it back to Whiting because he thought the signature in pencil was not valid, but the jury could find that after the note was returned to him with the explanation that the penciled signature was valid, he accepted it.

Objection was made that the court permitted the plaintiff to testify (over objection that it was the conclusion) that the plaintiff was the owner of the note. There was no error here.

It is complained that the court erred in permitting Whiting to testify that he had no recollection of sending any part of the money received from the sales of the plaintiff, the argument being that on this testimony plaintiff was able to argue to the jury that defendant had signed the note, thereby acquiring plaintiff's share in the land, and that plaintiff had received nothing therefor. This error, if it be such, was cured by the instructions of the court to the effect that all that was required of the purchaser was to pay the money to the referee and that such purchaser was in no event responsible for the disposition thereof made by the referee.

Appellant's sixth proposition is predicated upon a construction of the record with which the jury did not agree.

Appellant urges that the court erred in permitting Whiting to testify that he was acting as agent for the defendant. Appellee denies this, but neither offers any citations to support his contention. But see note to Exchange State Bank v. Occident Elevator Co., 90 A. L. R. 749. In this state the rule is that such testimony is admissible. Lyons v. Farm P. M. Ins. Assn., 188 Iowa 506, 176 N. W. 291. Some of the questions on this subject were objected to as leading and while this may be so, we have been unable to detect any error therein on the state of this record.

Lastly it is argued that there was misconduct on the part of the jury in failing to observe instructions of the court. In the nature of things, such a complaint defies analysis and we do not attempt it. It is sufficient to say that there is as much room for plaintiff to assert that the jury did follow the direction of the court, as there is for appellant to deny. From what has gone before it is apparent that the question involved in the case is one of fact for the jury. For this reason and the further one that a verdict for either party would seem to work a hardship on the other, we have examined and reexamined the instructions, although they are not criticized, with the view of determining whether the court might inadvertently have misled the jury into a wrong result. We have discovered no fault in them. This being so, we may not substitute our judgment for that of the jury. Their verdict is final. There are other possible errors suggested by the record but the foregoing disposes of all that call for attention.

Having discovered no reversible error, it follows that the case should be, and it is, affirmed.—Affirmed.

HALE, STIGER, MILLER, BLISS, and RICHARDS, JJ., concur.