In the Matter of Mayflower Farms, Inc., Appellant, against Charles H. Baldwin, as Commissioner of Agriculture and Markets of the State of New York, et al., Respondents.

(Argued February 25, 1935; decided April 16, 1935.)

*Seymour Ellenbogen* and *Bernard Ellenbogen* for appellant.

*Henry S. Manley* for respondents.

HUBBS, J.   Appellant is a domestic corporation engaged in the sale of milk at wholesale to stores in New York city.   It was organized in May, 1933.   In April, 1934, it made application for a milk dealer's license.   A hearing was held upon the application and it was found that appellant was engaged in selling an unadvertised brand of milk, that is, milk not having a well-advertised trade name.   The application was denied for the reason that appellant had violated a price-fixing order by selling milk at the unadvertised price which was one cent per quart below the price fixed by respondent for the sale of milk having a well-advertised trade name.   It was decided that as appellant was not engaged in the milk business on April 10, 1933, it was not entitled to avail itself of the one cent unadvertised price differential provided for in section 258-q of the Agriculture and Markets Law (Cons. Laws, ch. 69) which became effective April 1, 1934.

Chapter 158, section 317, subdivision c, of the Laws of 1933, was substantially the same as chapter 126, section 2 (258-q), of the Laws of 1934, which reads as follows:

" It shall not be unlawful for any milk dealer who [at the time this act shall take effect is] *since April tenth, nineteen hundred thirty-three has been* engaged *continuously* in the business of purchasing and handling milk not having a well advertised trade name in a city of more than one million inhabitants to sell fluid milk in bottles to

stores in such city at a price not more than one cent per quart below the price of such milk sold to stores under a well advertised trade name, *and such lower price shall also apply on sales from stores to consumers;* provided that in no event shall the price of such milk not having a well advertised trade name, be more than one cent per quart below the minimum price fixed [by the board] for such sales to stores in such a city." .

The words in brackets were eliminated in the revision of the law in 1934 and the words in italics were added. The effect is to leave the date April 10th, 1933, the same in both enactments.

The sole constitutional question urged is that the provision of section 258-q allowing unadvertised dealers to sell milk at a lower price than advertised dealers, provided they were engaged in the business on April 10th, 1933, and preventing unadvertised dealers who became such subsequent to that date from selling at a lower price, is unconstitutional and void in that it violates section 1 of the 14th Amendment of the United States Constitution.

The constitutionality of the emergency legislation embodied in the milk regulation law, chapter 158 of the Laws of 1933, in various phases has been passed upon by the courts. *People* v. *Nebbia* (262 N. Y. 259; affd., 291 U. S. 502) passed upon the price fixing provision and held it to be constitutional. In *Matter of Eisenberg Farms, Inc.,* v. *Baldwin* (265 N. Y. 662) this court decided that the differential clause in favor of co-operative associations which permitted them to pay to producers less than the price fixed by the Commission for milk was constitutional. The case of *Borden's Farm Products Co.* v. *Baldwin* (7 Fed. Supp. 352; reversed and remanded to the court to make findings of fact in 293 U. S. 194, without passing upon the constitutional question) involved the question of the constitutionality of the unadvertised differential provision in its entirety. The statutory court provided for by section 266 of the Judicial Code (28 U. S.

C. A. § 380) held it to be constitutional in an opinion by Judge LEARNED HAND.

The opinions in those cases have stated in great detail the conditions in the milk producing and marketing business in the State at and prior to the date of the enactment in question. They call attention to the fact that the statute was enacted after careful and extended investigations by committees of the Legislature into the milk business as a whole. They point out the chaotic condition existing in the business and the injurious effect produced thereby upon the farmers of the State engaged in milk production, upon the public health and general welfare.

We do not feel called upon to restate the conditions so fully stated in those opinions. We confine our discussion to the single question of whether the Legislature exceeded its power in fixing a specific date, the date when the original statute became effective, April 10, 1933, as the date after which unadvertised dealers not in business at that time were prohibited by the effect of the act from selling milk at a price less than that at which advertised dealers were required to sell.

In New York city there are four large corporations engaged in the milk business. Their brands of milk are highly advertised and well known to all retail dealers and purchasers of milk. They have come to be known as the advertised companies. There were hundreds of small dealers who sold unadvertised brands and they are known as the unadvertised dealers. They purchase their milk from about 50,000 independent farmers. When the Legislature determined upon the policy of regulating and fixing the price at which milk could be sold it was confronted by the fact that the unadvertised dealers could not successfully compete with the advertised dealers, if required to sell their unadvertised milk at the same price at which the advertised dealers sold. Prior to that time the unadvertised dealers had sold milk about one cent per

quart less than the price charged by advertised dealers. The market was familiar with that condition and as a result, farmers selling milk to the dealers had become divided into two classes, one selling to the advertised dealers which owned and operated large and extensive plants in favorable localities for collecting and shipping milk, and the other, known as independent farmers, selling to the unadvertised dealers, less favorably equipped, but still, on the whole, having large sums invested in their business. It was believed that the effect of establishing a uniform price at which milk should be sold by all dealers would be to drive the unadvertised dealers out of business and work a practical confiscation of their property. · That would also deprive about 50,000 farmers of a market for their milk and leave them unprotected. At the same time it would consolidate the entire milk business of New York city in the four large advertised companies.

To meet the situation, the Legislature enacted the provision allowing a differential price in favor of the unadvertised dealers and that provision has thus far been held to be constitutional. (*Borden's Farm Products Co.* v. *Baldwin, supra.*)

The effect of the act was to maintain the competitive position of the two classes of dealers in the same condition which existed before the enactment. Before the enactment, any person could go into the milk business at any time and sell his milk at any price at which he chose to sell it. The result had been that small dealers would attempt to break into the business by underselling which usually resulted in financial disaster to themselves and to the farmers from whom they had purchased their milk on credit. It also resulted in a general tendency to keep the price of milk paid to farmers down to a point where it demoralized the whole milk business. The primary purpose of the Legislature was to correct that condition by the establishment of a uniform fair price at which milk could be sold. We have held that the act in that respect

was constitutional (*People* v. *Nebbia, supra*), although its practical effect would be, without the differential clause, to prevent new dealers from entering the field, as no new dealer could hope successfully to compete with the established advertised dealers selling well-known advertised brands.

Appellant does not question the power of the Legislature to provide for the fixing of a uniform price for the sale of milk, but argues that when it provided for fixing a uniform price and then because of the factual situation provided for a differential in favor of those unadvertised dealers then engaged in the business, it thereby in effect prohibited all others from engaging in the business as unadvertised dealers and exceeded its power. It urges that such limitation has no reasonable relation to the main purpose of the act but constitutes an arbitrary, discriminatory and unreasonable limitation which denies to it the equal protection of the law.

If the Legislature believed the limitation had a reasonable relation to the purpose which it desired to accomplish by the enactment and the facts reasonably justified that belief, then it acted within its jurisdiction and it is not for the courts to determine that it acted unwisely, although the effect of its action may deprive the appellant and others so situated from engaging in the milk business as unadvertised dealers during the emergency period specified in the act.

The Legislature in effect provided that all milk dealers must sell at a uniform price, but owing to the factual situation it also provided that those engaged in the business as unadvertised dealers at the date of the original enactment should have the benefit of the differential. The act does not prevent by its terms others from engaging in the business provided they sell at the uniform price, neither does it prevent others from becoming unadvertised dealers. It only has that effect during the period of the emergency specified in the act. We believe that the

Legislature could have reasonably determined from the facts before it that new competition in the unadvertised class of dealers during the emergency period would have an injurious effect upon the result which it attempted to accomplish by the enactment.

It had before it evidence of the disastrous effect of unlimited competition in the business at the time of the enactment and prior thereto. It was attempting to stabilize the industry during a limited period only and it had the authority to enact any law which it deemed advisable to accomplish that purpose, provided the law so enacted had a reasonable relation to that purpose.

The act not only had the effect of limiting to those engaged in the unadvertised milk business at the date of the first act the privilege of the differential, but it also prevented the large holding companies, known as advertised dealers, from dissolving those companies and permitting the subsidiary corporations thereof from engaging in the sale of milk in competition with the unadvertised dealers and enjoying the privilege of selling at one cent per quart less than the uniform price. It might reasonably anticipate such action on the part of the large holding companies. It might also reasonably foresee that such action would result in driving unadvertised dealers from the field, with great financial loss to them and to thousands of farmers who were dependent upon them for a market for their milk, thus tending to defeat the very purpose which the differential clause was enacted to prevent.

" The Constitution does not secure to anyone liberty to conduct his business in such fashion as to inflict injury upon the public at large, or upon any substantial group of the people" (pp. 538, 539). " If one embarks in a business which public interest demands shall be regulated, he must know regulation will ensue." (*Nebbia* v. *New York*, 291 U. S. 502, 534.)

We believe that the provision of the statute in question has a reasonable relation to the legislative purpose which

was in itself legal and that it is neither arbitrary nor discriminatory.

The order should be affirmed, with costs.

FINCH, J. (dissenting). Assuming but not deciding that the unadvertised differential provision is constitutional, is the provision limiting its application to dealers in the field " since April 10, 1933," reasonably adapted to the end to be accomplished, or does it go further and infringe arbitrarily and unreasonably upon the rights of the appellant and other dealers who have entered the business since that time and deny to them the equal protection of the laws? It is true that in a highly-organized society the liberty of each individual must yield to the public need when it appears that the interest of the public generally, as distinguished from that of a particular class, requires it, and when the means used are reasonably necessary for the accomplishment of the desired end, and are not unduly oppressive. (*Lawton* v. *Steele*, 152 U. S. 133, 137; *Colon* v. *Lisk*, 153 N. Y. 188, 196; *Wright* v. *Hart*, 182 N. Y. 330.) To sustain such legislation under the police power, the courts must be able to find that it tends in some degree to prevent an evil or to preserve public health, morals, safety or welfare. When no such tendency is disclosed and the legislation impinges upon the liberty and interferes with the property of private citizens, the duty of the courts is to declare it invalid for undue interference with the right of a person to pursue unmolested and without unreasonable regulation any lawful calling which he may choose, has always been condemned under our form of government. (*Lochner* v. *New York*, 198 U. S. 45.)

When we approach the case at bar from the standpoint of an individual who desires to enter the milk business, we find that the door is effectively closed to him. Denying the individual the price differential is as effective as a direct prohibition.

■

Mr. Justice CARDOZO in discussing the same Milk Control Law in *Hegeman Farms Corp.* v. *Baldwin* (293 U. S. 163, 169), said: " What is fixed is a minimum only. None the less, the competition among dealers is so keen that in practice the legal minimum is the maximum that the appellant [an unadvertised dealer] is able to charge." (Words in brackets inserted.)

The basic purpose of the Milk Control Law was to afford protection and assistance to the farmers. The only claimed reason for the price differential was to prevent the price fixing provisions forcing the unadvertised dealer out of business, leaving complete control in the hands of the advertised dealers. The limitation on the number of unadvertised dealers, however, is of no benefit to the farmer, nor does it tend to preserve the *status quo*, or protect competitive conditions or opportunities existing just prior to the enactment of the Milk Control Law. On the contrary, this time provision limits the field of distribution for the farmer by limiting the number of independent dealers. Nor does the requirement in any way tend to prevent monopolistic control by the advertised dealers.

It is claimed that the differential in price is necessary for the preservation of the independent milk distributor for, if the price charged by all were the same, those doing business under a well-advertised name would tend to absorb the entire market. When the Legislature went further and conferred the additional benefit of a monopoly on those unadvertised dealers already in the business by preventing any newcomer from entering, they gave an advantage to the independent dealer which went far beyond the requirements of the circumstances. It transforms the provision from one aimed to prevent a monopoly by the well-advertised dealers into one creating a monopoly by the unadvertised dealers.

On the one hand, by the differential an attempt is made to preserve competitive conditions as they existed before the statute, and yet, on the other hand, it abolishes and

wipes out competitive conditions by prohibiting the normal and natural emergence of new dealers into the field. This provision might have provided for one set of qualifications for milk dealers who were engaged in business prior to April 10, 1933, and another and more stringent set for those who came in thereafter. The Legislature might have provided for stricter regulations concerning different classes of milk dealers. (*Watson* v. *Maryland*, 218 U. S. 173; *People* v. *Griswold*, 213 N. Y. 92; *Spector* v. *Building Inspector*, 250 Mass. 63.) The regulations could be validly based on conditions, as for example, the grades of milk sold, and the character of distribution. To prescribe qualifications for entrance into the business or to prescribe regulations covering the different classes, is entirely different from proscribing, in effect, the right to engage in such business altogether. The record shows that the identical brand of milk sold by appellant is sold by several other independent milk dealers, competitors of appellants, to the same class of retailers in the same stores and on the same streets. Why should the appellant have to charge one cent more per quart for his milk than his competitors charge? The appellant is in the same class with these competitors. Why the unfair discrimination? Without any apparent justification it discriminates between one entering the milk business prior to April 10, 1933, and a dealer entering on the next day. One looks in vain to find a reason for this discrimination. The only reason given is that the Legislature did not wish to increase or intensify the competition against the advertised dealers by permitting new dealers to join the class of the unadvertised dealers. In other words, a monopoly was given to the unadvertised dealers so as not to increase the competition against the advertised dealers. Is it not apparent that this reason is in fact no reason at all and is only given in an attempt to justify an unjustifiable discrimination? Another reason given is that the advertised dealers might permit their subsidiaries to enter

the field of the independent dealer. As the only justification for the differential against the advertised dealer is the potent sales appeal of the well-advertised name, no reason remains when the company sells the milk under another name. Thus does the monopoly given to the independent dealers stand without justification or reason.

Peculiarly applicable to the case at bar is the language which appears in *Matter of Pell* (171 N. Y. 48, at p. 59): " The learned counsel for the appellant states a very apt illustration in his brief, as follows: ' We often hear it declared that the legislature may designate watches and carriages as a class of property and subject the same to the payment of duties and taxes, but would anyone claim that a law, declaring that all watches or carriages which were purchased prior to June 30, 1885, should be appraised and taxed, could be sustained upon the ground that such law merely designated a class of property for taxation? ' Where the statute declares that the owners of a particular class of property, acquired at a particular time, shall be taxed, it is equivalent to naming the owners of such property; it is in no sense a general classification."

Just as watches are watches and carriages are carriages, regardless of when acquired, so are milk dealers selling unadvertised brands of milk, milk dealers selling unadvertised brands of milk, regardless of when they entered the milk business. If this time provision is valid then a similar provision would be valid which designates more exactly those intended to be benefited. Also such a monopolistic class as named by this statute will tend continually to become narrower and thus destroy itself and tend to play more into the hands of the advertised dealers because of this very provision shutting the door absolutely against new-comers in the field. Therefore, the general public will suffer from this monopoly given to the independent dealer.

Thus the statute by reason of the insertion of this time limitation not only makes a present of a monopoly to the

independent dealer, but in addition is foreign to the purpose of the law, which is alleged to be an attempt to preserve competitive conditions.

The presumption which attaches in favor of legislative action is of no avail where it is evident that the classification established by the statute is arbitrary. (*Borden's Farm Products Co.* v. *Baldwin,* 293 U. S. 194, 209, 210; *Smith* v. *Cahoon,* 283 U. S. 553; *Southern Ry. Co.* v. *Greene,* 216 U. S. 400, 417.)

Although the time limitation clause is unconstitutional as denying to the appellant the equal protection of the laws, this does not require that the entire provision be declared a nullity. The section contained a separability clause and it is only necessary to delete the offending clause, viz., " since April 10, 1933." With the arbitrary time limitation excised from the unadvertised differential provision, the appellant will assume its rightful place in the class of milk dealers selling unadvertised milk and be able to meet the competition if it can, not only of the well-advertised dealers, but also of the unadvertised dealers who already have an established business and are selling the same product in the same territory as the appellant. Thus will the arbitrary, unreasonable and invalid time limitation be destroyed and at the same time the original purpose of the law, to protect the milk producer, to preserve competition and to stabilize milk prices, be promoted and safeguarded.

The order of confirmation of the Appellate Division should be reversed and the determination of the respondents should be annulled.

Lehman, Crouch and Loughran, JJ., concur with Hubbs, J.; O'Brien, J., concurs in result on the authority of *People* v. *Nebbia* (262 N. Y. 259; affd., 291 U. S. 502); Finch, J., dissents in opinion, in which Crane, Ch. J., concurs.

Order affirmed.