In the Matter of the Application of ELITE DAIRY PRODUCTS, INC., Petitioner, for a Certiorari Order against PETER G. TEN EYCK, Commissioner of the Department of Agriculture and Markets of the State of New York, Defendant.

Third Department, May 13, 1936.

*Harry L. Marcus* [*Herbert L. Maltinsky* of counsel], for the petitioner.

*Henry S. Manley, Counsel for the Department of Agriculture and Markets*, for the defendant.

McNAMEE, J.  On February 26, 1935, the petitioner made application in writing to the Commissioner of Agriculture and Markets for a license " to purchase, handle, sell or distribute milk, pursuant to the provisions of Article 21 of the Agriculture and Markets Law, for the period ending March 31, 1936." The application showed that the petitioner was a domestic corporation, that its principal place of business was located in Brooklyn, and the territory within which the proposed license was to be exercised was the city of New York.  The petitioner was then holding a license for the sale there of cream only, and sought a license to authorize

it to engage in the sale of fluid milk. It had not succeeded any other dealer in business, but did propose to purchase a milk route from a licensed dealer, and to that end had accepted a bill of sale thereof, conditioned upon the grant of the license applied for. The application further showed, among other things, that the corporation had a milk depot, had substantial assets, owed no debts, had no judgment against it, that no suits were pending, that it held a milk dealer's permit from the health department of the city of New York, and that it had been guilty of no violation of law. The application also contained an agreement to abide by the requirements of the Milk Board, and it was duly acknowledged by the corporation. With the application a license fee of twenty-five dollars was presented.

The Commissioner, through the Division of Milk Control, after a hearing, denied the application. The determination was based upon a memorandum of the Director of the Division of Milk Control, which in turn was based upon a report of the supervisor of field work who conducted the hearing. The memorandum, in giving the grounds for the conclusion reached, stated in substance that the president of the petitioner was without such experience in the milk industry as would indicate that the proposed venture would be successful; that the president did not appear to be familiar with the milk trade or the competitive conditions thereof, nor with the " relation of milk control to milk operations; " that the petitioner would be obliged by law to sell milk at a higher price than other dealers of the same class already in the business would be required to charge for milk of the same grade and quality (a statement now without legal basis, *Mayflower Farms, Inc.*, v. *Ten Eyck*, 297 U. S. 266); that the area of New York city was already " adequately served; " and that the granting of the license " does not appear " to be in the public interest. It is of this determination, based on these reasons, that the petitioner asks a review.

It may be conveniently noted that article 21, above mentioned, is a part of the body of permanent law of this State, as distinguished from "emergency legislation," and is not a part of the Emergency Milk Control Law (Agriculture and Markets Law, art. 21-A, added by Laws of 1934, chap. 126, § 2; *Matter of Mayflower Farms, Inc.*, v. *Baldwin*, 267 N. Y. 9, 12.)

There is no contention that the petitioner has not complied with section 258 of article 21, in filing its application; and evidently the action of the Commissioner was taken under section 258-c of that law, in treating the application of the petitioner as one for an " extension " of its business, and in denying the application.

The petitioner urges that this latter statute is unconstitutional in that it purports to authorize the Commissioner to deprive it of the common right to engage in lawful private business, and also because it contains an unlawful delegation of legislative power, in that it fails to prescribe proper standards, if it were otherwise valid. There is no question here as to the terms, scope or interpretation of the application, nor of the conduct of the applicant, any more than there is of the scope of the determination, which is a final denial of a definite and complete application. (*Matter of Crowley's Milk Co.* v. *Ten Eyck*, 270 N. Y. 328.)

In so far as we are concerned here, section 258-c (in effect April 1, 1934) provides as follows: " No license shall be granted to a person not now engaged in business as a milk dealer except for the continuation of a now existing business, and no license shall be granted to authorize the extension of an existing business by the operation of an additional plant or other new or additional facility, unless the Commissioner is satisfied that the applicant is qualified by character, experience, financial responsibility and equipment to properly conduct the proposed business, that the issuance of the license will not tend to a destructive competition in a market already adequately served, and that the issuance of the license is in the public interest."

It will be observed that the provisions of the statute may be fairly separated into two parts: the one which provides that no license shall be granted to any person not engaged in the business of a milk dealer when the act took effect, unless he become the owner of a then existing business; and the other which provides that no license shall be granted to authorize the extension of an existing business, unless the Commissioner is satisfied in the particulars mentioned in the section.

Thus, in the first part of the section there is an absolute prohibition against the establishment of a new business to deal in milk. No doubt is suggested of the State's right to regulate and control the distribution of milk to the public. But here the question of regulation is not present; only prohibition of the petitioner is provided for. In the *New State Ice Co.* case the right to regulate was conceded, and actual prohibition was not before the court. The complaint before the court there was only the requirement that an applicant show " necessity for the manufacture, sale or distribution of ice, or either of them, at the point, community or place desired." In that case the United States Supreme Court said: " Plainly, a regulation which has the effect of denying or unreasonably curtailing the common right to engage in a lawful private business, such as that under review [ice], cannot be upheld consist-

ently with the Fourteenth Amendment. Under that amendment, nothing is more clearly settled than that it is beyond the power of a State, ' under the guise of protecting the public, arbitrarily [to] interfere with private business or prohibit lawful occupations or impose unreasonable and unnecessary restrictions upon them.' " ( *New State Ice Co.* v. *Liebmann,* 285 U. S. 262.)

It is urged that the Commissioner regarded the application now under review as one for an " extension " of a business, rather than that of a new entrant. The application itself says nothing about an extension of its business. It seeks a license to deal in milk; and it was that application which was denied. The view taken of petitioner's application by the Commissioner does not alter its content, nor the rights acquired thereunder. And, in so far as we are concerned here, whether the application be regarded as one to establish a new business, or to extend an old one, does not alter the principle to be applied. In either case it is a question of prohibition against the pursuit of a lawful private business, not regulation. To confine this decision to the second part of the section 258-c, the aspect of an " extension " of a business, because of the view taken by the Commissioner, would be to avoid the issue. If the initial establishment of a private business may not be prohibited, its extension may not. Both involve the same common right, and both are within the protection of the same amendment.

The second part of the statute prohibits the extension of an existing business, or the addition of a new plant or facility, except when the Commissioner is satisfied that the applicant is qualified (a) by character, (b) by experience, (c) by financial responsibility, and (d) by equipment to properly conduct the proposed business. And so, permission to extend a dealer's business is prohibited unless the Commissioner is satisfied that (e) the extension will not tend to destructive competition (f) in a market already adequately served. The statute does not call for any showing on the part of the applicant, beyond the application itself, nor provide for any procedure under which a showing may be made, and requires no finding of fact on the part of the Commissioner. No fact was found here. The statute does not point out what character is requisite for a milk dealer, nor does it suggest that any particular financial responsibility is necessary, what plant and equipment are adequate, what is the standard of a properly conducted milk business, what competition is destructive, and when a community is adequately served. Even though it were competent for the Legislature to prescribe such conditions, and to fix such standards, for the conduct of private business ( *New State Ice Co.* v. *Liebmann,*

*supra*), they have not been prescribed. On the contrary, the Commissioner is free to follow his own judgment, notion or whim in determining whether any or all of these conditions (as he may define them) have been met, and that, without finding the facts. He is vested with absolute and arbitrary power in determining the standards of character, experience, financial responsibility, equipment, etc., in determining whether a citizen is free to enlarge his business. Here we have a delegation of power over the right to enter upon or extend lawful private business, without guide or standard to direct or restrain the exercise of that power. Again the Fourteenth Amendment applies. (*People* v. *Klinck Packing Co.*, 214 N. Y. 121, 138; *Wichita Railroad & Light Co.* v. *Public Utilities Commission*, 260 U. S. 48, 59; *Panama Refining Co.* v. *Ryan*, 293 id. 388, 432; *Schechter Corporation* v. *United States*, 295 id. 495, 539; *Mayflower Farms, Inc.*, v. *Ten Eyck*, 297 id. 266.)

The petitioner also urges a violation of its rights, in that the decision against it was *quasi* judicial, and was made by an official who did not hear the evidence nor see the witnesses, citing *Smith* v. *State of New York* (214 N. Y. 140). We do not regard the point as unimportant, but its decision and d scussion are unnecessary in view of the conclusion reached on the other aspects of the case.

The determination should be annulled, and the matter remanded to the Commissioner of Agriculture and Markets for action by him in harmony with this opinion, with costs.

HILL, P. J., RHODES and HEFFERNAN, JJ., concur; BLISS, J., dissents.

Determination annulled, with fifty dollars costs and disbursements, and matter remitted to the Commissioner of the Department of Agriculture and Markets with direction to issue a license.