OPINION OF THE COURT
Herbert Kramer, J.
ISSUES
1. Does the removal of a seat belt from a fire truck constitute negligence on the part of the City absent a statutory duty to provide seat belts in emergency vehicles?
2. Does the "fireman’s rule” preclude recovery where the fire truck was traveling to a relocation when it was involved in an accident?
FACTS
Defendants, Gregory E. Guest (hereinafter Guest) and the City of New York (hereinafter City), move, after a jury trial, to set aside the verdict as a matter of law (CPLR 4404), or alternatively ordering a new trial on both liability and damages, or reducing the amount of the verdict as excessive.
Plaintiff, a City firefighter, was in a fire truck relocating to another firehouse. An intersection accident ensued. Plaintiff was seated in a rear jump seat which was not equipped with a seat belt.
The jury found that both parties were negligent in the operation of their vehicles but could not determine which of the vehicles passed the red light. Further, the jury found that the 1979 model year fire vehicle was originally equipped with seat belts, as were all other fire department vehicles ordered *134 since the early 1970’s. The seat belts had been removed leaving only the seat belt mounts in this vehicle. Additionally, the jury found that the vehicle was not engaged in an emergency operation; also that the seat belt removal was the cause of 100% of plaintiffs injuries.
DISCUSSION
1. Seat Belt Issue
The City moves to set aside the verdict as a matter of law, contending that Vehicle and Traffic Law § 1229-c (4)[1] exempts fire trucks (Vehicle and Traffic Law § 101) from the mandatory seat belt requirements precluding a common-law duty.
This court upholds a jury finding of negligence for the violation of an assumed duty in the face of a statutory exemption (see, Indian Towing Co. v United States, 350 US 61 [1955]).
At trial, the jury heard evidence of the then general custom and practice of the installation of safety belts in fire trucks as standard safety equipment. The internal rules of the fire department require a firefighter to use seat belts when available,[2] despite Vehicle and Traffic Law § 1229-c.
New York courts have held that failure to provide seat belts in vehicles is negligence as a matter of law (Vehicle and Traffic Law § 383; McMahon v Butler, 73 AD2d 197 [3d Dept 1980]). In the instant case, there cannot be a finding of negligence, as a matter of law, because of the statutory *135 exemption provided to emergency vehicles in Vehicle and Traffic Law § 1229-c (see, Spier v Barker, 35 NY2d 444 [1974] [regardless of statutory requirement, common-law duty to exercise reasonable care]).[3]
In a California case, similar to the case at bar, a passenger injured in a two-car collision brought suit against the vehicle’s driver/owner alleging that she was negligent in removing automobile seat belts. The court held that there existed a triable issue of fact of whether the driver/owner breached her duty to exercise due care in the safe operation and maintenance of her vehicle when she removed the seat belts, precluding summary judgment in her favor (Twohig v Briner, 168 Cal App 3d 1102, 214 Cal Rptr 729 [1985]). The California law provides that an operator of a motor vehicle has a common-law duty to use reasonable and ordinary care to prevent increasing the danger of injury to a passenger, or others, from operating or maintaining the automobile.
Thus, in California, the City would have been negligent as a matter of law. In Twohig (supra), the court makes clear that while it is conceded that no statute requires a private owner/ operator to provide belts in a motor vehicle, as in the case at bar, the owner/operator had a common-law duty to use reasonable and ordinary care to prevent increasing the dangers of injury to passengers.
While New York does not have this statutory requirement for fire department vehicles, the internal rules and regulations reveal that the fire department recognizes the established common-law principle that an employer has a general duty to protect the health and safety of its employees, including providing a reasonably safe place to do their work (see, Labor Law § 200). A jury may regard a violation of a work rule as some evidence of the employer’s negligence (Warren v New York State Thruway Auth., 51 AD2d 679 [4th Dept 1977]; see also, Horan v Cold Spring Constr. Co., 109 Misc 2d 1034 [1981]). A jury may also regard a failure to prohibit a dangerous situation as possible evidence of employer’s negligence (Danbois v New York Cent. R. R. Co., 12 NY2d 234 [1963]).
As recently as 1991, the Second Department has recognized the right to proceed under a theory of liability that the city *136 failed to provide "proper and adequate equipment” (Assante v City of New York, 173 AD2d 430 [2d Dept 1991]). The Court did not dispute the jury’s province to consider whether the city was negligent in failing to provide plaintiff with proper and adequate equipment, in failing to properly inspect the equipment and in failing to take proper safety measures (cf., McCormack v City of New York, 172 AD2d 357 [1st Dept 1991]).
Cases involving the failure of common carriers to provide seat belts have addressed the issue of whether the jury could find that this amounted to negligence. In Mortensen v Southern Pac. Co. (245 Cal App 2d 241, 53 Cal Rptr 851 [1966]), plaintiff employee was thrown from the railroad’s truck which was not equipped with seat belts. The court held that whether the railroad’s failure to provide seat belts amounted to negligence was a jury question. Similarly, in Greyhound Lines v Superior Ct. (3 Cal App 3d 356, 83 Cal Rptr 343 [1970]) the court held that the jury was to decide whether the carrier’s failure to provide seat belts amounted to negligence (Montgomery v Midkiff, 770 SW2d 689 [Ky 1989] [jury to determine whether failure of bus company to provide seat belts was the proximate cause of plaintiff’s injuries], revd on other grounds sub nom. Transit Auth. v Montgomery, 836 SW2d 413; Benson v Penn Cent. Transp. Co., 463 Pa 37, 342 A2d 393 [1975] [whether a taxicab company was negligent in failing to provide seat belts was for the jury]; Tiemeyer v McIntosh, 176 NW2d 819 [Iowa 1970] [issue of cab company’s negligence for failing to provide seat belts was properly determined as a question of fact]).
The higher standard of care that these cases require reflect nationwide responses to the increases in highway fatalities and personal injuries of the 1960’s.[4] It is a matter of common knowledge that safety belts are effective in reducing fatalities and minimizing injuries in motor vehicle collisions. "The seat belt * * * offers the single best protection available to the *137 automotive occupant exposed to an impact” (Synder, Seat Belt as a Cause of Injury, 53 Marq L Rev 211). "[S]tudies overwhelmingly indicate that the seat belt fulfills its primary purpose of restraining the automobile occupant during and immediately after the initial impact; in doing so, it significantly reduces the likelihood of ejection and frequently prevents 'second collision’ of the occupant with the interior portion of the vehicle” (Spier v Barker, supra, at 452).
The State is empowered to enact legislation designed to promote the health, safety, welfare and morals of its inhabitants. In 1984, Governor Cuomo signed the Nation’s first mandatory seat belt use law (MUL) codified at Vehicle and Traffic Law § 1229-c (see, Benguerel, Mandatory Seat Belt Legislation: Panacea For Highway Traffic Fatalities?, 36 Syracuse L Rev 1341 [1986]). Despite the statutory exemptions for emergency vehicles, approval of MUL was clearly intended to address the " 'national tragedy’ resulting from automobile accidents and unrestrained drivers and passengers.”[5]
In light of the intent of this legislation, the City contends that the section 1229-c (4) exemption creates absolute immunity. "It is not for this court to decide whether the Legislature should not have made the exclusion from its regulation so long as exemptions bear reasonable relation to the desired legislative purposes.” (People v Weber, 129 Misc 2d 993, 997 [1985], citing Matter of Mayflower Farms v Baldwin, 267 NY 9, 15 [1935], revd on other grounds 297 US 266 [1936].) Vehicle and Traffic Law § 1229-c (4) may have been designed to protect municipalities from the violation provisions of that section and to limit their responsibility in terms of its penal aspects, however, it would be illogical to assume that the Legislature would relieve the City of any responsibilities for injuries suffered on an emergency vehicle. Thus, the City seeks to expand the scope of inherent risks to firefighters to matters so routine as to exonerate themselves from any negligence claims. This application of Vehicle and Traffic Law § 1229-c does address the concerns of the State.
The State has a compelling interest in saving lives, but in addition to this, the State has an interest in promoting the welfare of its citizens. In Wells v State of New York (130 Misc 2d 113, 119 [1985]), the court explained that: "The cost to *138 society of the results of death or severe injuries is enormous. The long-term care, often extending to lifetime care, of paraplegics, quadraplegics and patients on life-support systems devolves on the State * * * A very large percentage of those persons will never return to a normal life or be able to work”. Public policy dictates that a higher standard of care for failure to provide for the safe operation and maintenance of motor vehicles goes out to firefighters as well. An important consideration should be whether there was any reasonable means of preventing the injury. In the case at bar, evidence shows that this could have been accomplished cheaply by the mobile maintenance unit of the department without taking the spare rig out of service. It is contrary to the principles of justice that the City be relieved of such a simple duty.
The policy to reduce second collision fatalities resulted in the internal rules and regulations that the fire department follows to the present day. Despite a State law exemption, New York should not have to wait until a statutory duty of care is enacted to apply common-law principles in finding the City negligent (compare, Cal Civ Code § 2100).[6] As pointed out in Montgomery (supra) there was no statutory duty in Kentucky for common carriers to provide seat belts. In Tiemeyer (supra) and other cited cases, the courts did not impose a duty on common carriers to provide seat belts. Rather the court left it to the jury to decide whether under the circumstances, such a failure, was a negligent act. It follows that a jury’s decision could vary, again depending on the type of carrier and other circumstances. Thus, to suggest that a new duty on common carriers would be judicially imposed is incorrect (Montgomery v Midkiff, at 691). The same can be applied to the case at bar. The toll of highway injury and death is such that judicial policy should be against deferment to legislative inaction and in favor of having juries pass upon the question until such time as the Legislature may choose to adopt supervising safety regulations. (Greyhound Lines v Superior Ct., 3 Cal App 3d, at 360, 83 Cal Rptr, at 347, supra; cf., Twohig v Briner, 168 Cal App 3d 1102, 214 Cal Rptr 729, supra.)
Just as an available and visible seat belt provides a passenger with an opportunity to mitigate damages by minimizing *139 his or her exposure to potential injury before an accident (Spier v Barker, 35 NY2d 444, supra), so does an owner/ operator have the opportunity to lessen that risk by refraining from removing seat belts. Since the "seat belt defense” places the burden of buckling up on the passenger, at minimum, an owner/operator should not remove installed auto safety belts (Twohig v Briner, supra).
Defendant Guest was found to be 10% liable for causing the accident and the jury was free to determine that the City’s negligence in removing the seat belts was the cause of 100% of plaintiff’s injuries. The court holds that but for Guest’s 10% negligence the accident and therefore the injuries would not have occurred and hereby denies Guest’s motion to direct a verdict, holding the City 100% liable for plaintiffs injuries.
2. Fireman’s Rule
Defendants contend that the verdict should be set aside because plaintiff is precluded from recovery pursuant to the "fireman’s rule” (Cooper v City of New York, 81 NY2d 584 [1993]; Santangelo v State of New York, 71 NY2d 393 [1988]).
The court holds that the defendants have failed to prove that the "fireman’s rule” applies.[7] Firefighters and police officers assume the risk of injuries resulting from the particular tasks they must perform and cannot recover as a general rule for injuries resulting from particular dangers arising from the performance of those duties (Cooper v City of New York, supra; Santangelo v State of New York, supra). In Santangelo, the police officers were injured performing the precise types of duties which are regularly encountered by police officers and for which police officers are specifically trained — the apprehension of an escaped mental patient. In Cooper, the police officers were responding to a high priority call, indicating that a fellow officer needs assistance.
In the case at bar, the City claimed that plaintiff had assumed the risk of injury because the relocation was an *140 inherent risk within the scope of the firefighter’s duty. In Santangelo (supra), the Court of Appeals emphasized the approach to be taken in applying the "fireman’s rule.” The Court stated that: "[M]unicipalities employ firefighters precisely because special skills and expertise are required to confront certain hazards — usually of an emergency nature— that expose the public to danger, these hazards often arise from negligence, and as a matter of public policy firefighters trained and compensated to confront such dangers must be precluded from recovering damages for the very situations that create a need for their services”. (71 NY2d, at 397 [emphasis added].)
The City contends that New York courts have applied the "fireman’s rule” to very mundane duties (Sciarrotta v Valenzuela, 182 AD2d 443 [1st Dept 1992] [highway control]; Clark v De John, 198 AD2d 818 [4th Dept 1993] [highway accident scene]; Damiani v City of Buffalo, 198 AD2d 814 [4th Dept 1993]; Morrisey v County of Erie, 198 AD2d 839 [4th Dept 1993]; Cottone v City of New York, 206 AD2d 345 [2d Dept 1994] ). The court posits that these cases are distinguishable. The determinative factor "is whether the injury sustained is related to the particular dangers which [firefighters] are expected to assume as part of their duties]” (Cooper v City of New York, supra, at 590).
In each case above cited, the activity of the police work put them in an obvious place of danger. In our case, the court finds that the firefighter’s injury from a routine two-vehicle collision while on a relocation call without a seat belt is not an assumed inherent risk. The defendants seek to confuse all risk with the inherent risks discussed in Cooper and Santangelo (supra). Contrary to defendant’s assertions, the "fireman’s rule” does not encompass every potential risk of injury, but only those risks inherent in the firefighter’s work so that a case of common-law negligence cannot be precluded merely because one is employed as a firefighter.
The jury would have been within its province to preclude recovery, pursuant to the "fireman’s rule”, if the situation was an inherently dangerous activity. The requisite finding must be that the fireman was engaging in dangerous activity of an exigent nature. Consistent with the jury’s verdict, the fire truck was comporting to the speed and red light rules of the Vehicle and Traffic Law for a vehicle not engaged in an emergency situation. Had the truck speeded or passed the red light, the firemen would then have engaged in an activity *141 inherent within the risks of their employment. Driving with emergency sirens and lights alone, although consistent with an emergency, would probably decrease the risk of danger; it is speeding or passing of the red light which increases the danger and constitutes the inherent risk and brings Cooper and Santangelo (supra) into play.[8]
Defendants’ motion to set aside the verdict as a matter of law is denied.
This court finds defendants’ remaining arguments to be without merit.

. Vehicle and Traffic Law § 1229-c: "(4) For the purposes of this section, the term 'motor vehicle’ shall include all motor vehicles which are required by section three hundred eighty-three of this chapter or regulation or would be required if such motor vehicle were registered in New York state to be equipped by a safety belt but shall not include * * * those vehicles which are authorized emergency vehicles, as such term is defined in section one hundred one of this chapter. ” (Emphasis added.)

. "Revised September 1972 Safety Bulletin No. 6 Safety Precautions While Responding to Alarms
"5. All members should under constant training, be familiar with definite assigned duties when preparing to leave quarters. These plans should seldom vary in order to assure routine compliance by members. Only in this way will safety precautions become a matter of habit, and, under the stress of responding, no unsafe acts will be performed in carrying out individual duties. Among the many duties to be included are the following:
"5.8 While en route, all seat belts shall be used. This is of utmost importance to members riding in the bucket seats. When necessary to stand, maintain a firm grip on hand strap, hand rail or other substantial structural part of the apparatus to prevent falls from the apparatus.”

. Faced with the uncontroverted testimony that all trucks from 1972 forward had belts and that there were in fact mountings for seat belts present at the position assigned to the plaintiff, it is clearly within the bounds of the jury to infer that the belts had in fact been removed.

. In 1966, Congress enacted the National Traffic and Motor Vehicle Safety Act of 1966. (15 USC § 1381.) Pursuant to the Act, the Secretary of Transportation delegated the authority and responsibility of issuing motor vehicle safety standards to the United States National Highway Traffic Safety Administration (NHTSA). The NHTSA promulgated the original Federal Motor Vehicle Safety Standard 208 in 1967 requiring manufacturers to install seat belts in all new cars after January 1, 1968 (Twohig v Briner, supra). Some States preceded and some followed the national directive.

. (Governor’s Mem approving L 1984, chs 365, 366, 1984 McKinney’s Session Laws of NY, at 3599.) In addition, Cuomo writes that "[w]e cannot wait to save lives and avoid serious injury.” (Ibid.)

. "§ 2100. General duties of carrier
"A carrier of persons for reward must use the utmost care and diligence for their safe carriage, must provide everything necessary for the purpose, and must exercise to that end a reasonable degree of skill.”

. If the jury didn’t prove that the fire vehicle passed through a red light on a relocation call whereby creating an emergency situation and risk inherent in their duties, the jury was within its province to conclude otherwise because the City failed to meet its burden of proof. (See, Arbegast v Board of Educ., 65 NY2d 161; Dowd v New York, Ontario & W. Ry. Co., 170 NY 459 [creation of comparative negligent and assumption of risk led to burden shifting to defendant]; see, CPLR 1412 [not only is the burden of proof on the defendant, but section 1412 also compels him to plead this matter in his answer as an affirmative defense].)

. Consistent with the totality of the jury’s determination, it is other negligence which contributed to the accident, such as failure to see or failure to keep the vehicle under general control.