## I. T. WISECARVER, Appellant, v. LONG & CAMP.

**Negligent Use of Team:**  INSTRUCTION.    In an action for injury
1   to a hired team, the court instructed that plaintiff must show
both defendant's negligence and that such negligence was the
direct cause of the injury, irrespective of the condition of the
team before or after making the trip.   *Held,* not erroneous as
withdrawing from the jury evidence of the condition of the
team on its return.

**Want of Care:**  INSTRUCTION.    In an action for injuries to a hired
2   team, refusal to instruct in substance that if the evidence
discloses that the team was injured while in defendant's
possession from a lack of ordinary care and prudence as shown
by its condition when returned, then the plaintiff is entitled
to recover, is error, though the time and place where the
injury or want of care occured does not appear.

**Same.**    It is error, in an action for injuries to a hired team, to
3   refuse to instruct in substance that it is the duty of defendant
to exercise ordinary prudence and care in driving the team
and to observe their condition, and if he failed so to do and
negligently drove them until injured, then defendant is liable.

**Competency of Witness.**    A witness who dissected a horse, though
4   not a veterinary, but who states that from experience he is
able to say whether the organs of the animal were in a normal
condition, is competent to give his opinion on that subject.

*Appeal from Jefferson District Court.*—HON.   M.   A.
ROBERTS, Judge.

FRIDAY, APRIL 10, 1903.

ACTION on account and also for loss of a horse and
injury to another alleged to have been caused by the neg-
ligent driving of defendants' employe.   The answer
admitted the account, denied liability for damages to the
team, and, by way of counterclaim, pleaded an account
against the plaintiff, which was also admitted.   Verdict
and judgment for difference in accounts, but no allowance
for damage to team.   The plaintiff appeals.—*Reversed.*

*Leggett & McKemey* for appellant.

*Rollin J. Wilson* and *Wm. J. Ross* for appellee.

LADD, J.—On the 21st day of March, 1900, Long & Camp, who are merchants engaged in business at Fairfield, hired a livery team and light wagon of plaintiff, which their employe, Roy Fry, drove to Glasgow, a distance of about twelve miles. The object of the trip was to nail up advertising boards on the way and at that place. Incidentally a young lady, who has since become Fry's wife, rode with him. They left Fairfield within an hour from 12:15 o'clock p. m., and returned between 5:30 and 6:45 o'clock the same evening. One of the horses died before midnight, and the evidence tended to show that the other could not be used for several weeks, and was of much less value than before the drive. On the part of plaintiff the evidence introduced tended to show that the horses had perspired freely, but that the sweat had dried on them when they came in; that the one which died bore whip marks on its rump; that though the roads were bad the trip was made in about four and one-half hours, and that the horses appeared to have been exhausted by overdriving. On the other hand, defendant's evidence tended to show that the team was not urged or whipped, that the roads were good save in low places, and that the journey was not made in less than six and one-half hours. The court in the fourth paragraph of the charge instructed the jury that if the death of one horse or the injury to the other was caused by the negligence of Fry, damages should be allowed.

Appellant especially complains of the fifth paragraph, which reads: " But if plaintiff has failed to prove by the greater weight of the evidence both of said alleged facts, 1. NEGLIGENT to wit, (1) that the defendants' agent, Roy use of team: instruction. Fry, was negligent in the manner as alleged by plaintiff, and (2) that the negligence of said Fry, so

proven, was the direct cause of the alleged injury to said team, then the plaintiff cannot recover, and this is true whatever you may find the condition of said team to have been either just before or just after making said trip. The mere fact of the death of one horse and injury of another, without proof of the alleged negligence on the part of the defendants' agent, would not make defendants liable." This did not, as contended, withdraw the evidence of the condition of the horses upon their return from the jury, and ought not to be so construe . It goes no further than to say that, in the absence of a finding of Fry's negligence, or that his negligence, if found, was the cause of the injury, there can be no recovery, even though the horses were in a worse condition when returned than when received. This was tantamount to saying that, regardless of the condition of the team upon its return, defendant was not liable unless the change, if any, was occasioned by negligence on the part of Fry while in his possession.

II.   The plaintiff of necessity relied largely on proof of the condition of the team when taken and when returned, with the inferences reasonably to be drawn therefrom. He was not bound to point out the specific respect in which Fry was negligent, save that it was in the management of the team or the particular place where the neglect occurred. This was the thought in the fifth instruction refused, which was as follows: "If you find from the evidence that the plaintiff's horses, which were hired to the defendants, were injured while in the possession of the defendants by the lack of such care as an ordinarily prudent man would give under like circumstances, then the defendants are liable for the injuries so done to said horses, though the evidence may not have shown to you when or where the overdriving or other want of care took place. It is sufficient if the evidence shows that the horses were actually injured by the lack of proper care in the management and driving, if such lack of care is

*2. WANT of care: instruction.*

shown by their condition when returned by the defendants, though the proofs may not point out the exact spot at which, or the time when, the horses suffered by such mismanagement or want of care."

The horses were shown to have been healthy, five and nine years old, accustomed to going long distances, and to have been returned, after a few hours' drive, in a dying condition. From these circumstances, and the unusual result, the jury might well have inferred that they were the dumb victims of such cruelty or indifference on the part of their driver as amounted to negligence. If their changed condition was not such as might reasonably have been caused by a drive of that distance in a prudent manner, and was such as would ordinarily have resulted from overdriving or other misuse, we see no reason for not considering this fact as tending to establish negligence on the part of the person handling them.

III. Fry testified, in substance, that he took no notice of the horses. Plaintiff requested the court to instruct that: "It is the duty of the defendants' employe in driving the plaintiff's team to exercise such care and watchfulness for them and their condition as a man of ordinary prudence would exercise while driving them, and if such employe failed to exercise such watchful care over the horses, and in fact did not notice their condition, and that they were becoming exhausted, when he might have observed that fact by the exercise of such care, and continued to drive them until they were exhausted, such lack of oversight and watchfulness was negligent, and defendants are responsible for it, and the injury shown by the evidence to have resulted therefrom." This instruction ought to have been given. The distance driven was twenty-four or twenty-five miles, and the jury might have found from the evidence that the employe failed to exercise proper care in observing the team and how they were enduring the drive.

3. SAME.

IV.    One Baldwin dissected the horse which died, and testified that from his experience he was able to say whether the different organs were in normal condition.  He was not **4 COMPETENCY of witness.** a veterinary surgeon, but had had considerable experience in dissecting horses and other animals, and said he was able to distinguish between healthy and diseased organs.  He was then asked to describe the condition he found this horse in.  An objection to his competency was sustained.  An offer to prove by him that the organs were in a healthy condition met a like result.  We think he ought to have been permitted to testify.  Though not a veterinary, he appeared to have knowledge of the matters concerning which he proposed to speak.  The fact that he had it from experience rather than from books ought not to disqualify him or exclude his testimony.  That fact merely affected the weight to be given to his opinion.  The evidence was material, as tending to show that the horse died from exhaustion rather than from disease.—REVERSED.