**Kim K. TIEMEYER, a Minor by her next friend, Kenneth Tiemeyer, and Kenneth Tiemeyer, Appellants,**

v.

**Daniel Boone McINTOSH, David LeRoy Amentell, and Burlington Yellow Cab Co., Inc., Appellees.**

**No. 53753.**

Supreme Court of Iowa.

May 5, 1970.

Hildreth & Ford, Burlington, for appellants.

Cray, Walter, Cray & Loeschen, Burlington, for appellees.

LeGRAND, Justice

This action arises out of an automobile accident in Burlington on January 15, 1966. Plaintiff Kenneth Tiemeyer sues on his own behalf and also as next friend of his minor daughter, Kim K. Tiemeyer. For convenience we refer to her as the plaintiff. The defendants are David L. Amentell, driver of a Yellow Cab in which plaintiff was a passenger; Burlington Yellow Cab Co., Inc., owner of the cab; and Daniel B. McIntosh, driver of the other car involved in the accident.

The case was tried to the court without a jury. The trial court found the negligence of McIntosh was the sole proximate cause of the accident. He does not appeal. Kenneth Tiemeyer was awarded judgment for $842.80 against McIntosh for medical and other expense incurred on behalf of his injured daughter. She was given $7500.00.

The action was dismissed as to both Amentell and the Burlington Yellow Cab Co., Inc. Plaintiff appeals from that part of the judgment.

Unfortunately for plaintiff it seems McIntosh is judgment-proof. It is important therefore that plaintiff secure a reversal of the trial court's judgment of dismissal against the cab company and Amentell if she is to have anything for her injuries.

The facts preceding the accident are simple and virtually uncontroverted. Plaintiff was a paying passenger in the Yellow Cab driven by Amentell. She occupied the front seat because he opened that door for her as she entered the cab. The cab was not equipped with seat belts. Amentell proceeded south on Curran Street at about 25 miles per hour, which is the legal speed limit at that point. The street is level and straight. The pavement was dry. As the cab approached and entered the intersection of Curran and Washington Streets, McIntosh was driving his vehicle north on Curran, also approaching Washington Street. He made a left turn directly in front of the cab and the two collided. McIntosh did not appear as a witness at the trial, but according to his deposition, part of which was introduced into evidence, he was traveling approximately 20 miles per hour at the time of the accident.

We discuss particular factual situations later as we consider the errors relied on for reversal. Plaintiff argues the trial court erred in the following four particulars:

(1) In refusing to permit expert opinion testimony concerning speed based exclusively on pictures of the vehicles and of the accident scene;

(2) In refusing to find Burlington Yellow Cab Co., Inc. negligent for failing to provide a seat belt for plaintiff's safety;

(3) In refusing to find the absence of a seat belt was a proximate cause of plaintiff's injuries;

(4) In applying an incorrect rule of proximate cause to the facts of this case.

The last three arguments all relate to the seat belt issue, and we consider them together before discussing the question of the exclusion of testimony as to speed.

I. Plaintiff alleges the failure to provide seat belts was negligence which was a proximate cause of her injuries (though not a proximate cause of the accident) entitling her to judgment against the cab company.

It is apparent the absence of seat belts had no bearing upon the occurrence of the accident itself and could not have been a proximate cause thereof. Plaintiff argues, however, that seat belts would have minimized her injuries, and she produced expert testimony to support her theory.

The effect on civil liability of a failure to furnish seat belts—or a failure to use those which are furnished—has received increased attention in recent years. Frequently the matter arises by way of a claim that one who fails to use available seat belts is guilty of contributory negligence as a matter of law. Such claims have been almost invariably denied. While we recognize the standard of care by which the conduct of a common carrier is measured is higher than that of a passenger in an automobile, we believe the cases involving the failure to use seat belts are of interest here. The courts have generally held the question of contributory negligence under such circumstances is one to be determined by the trier of facts and is not to be decided as a matter of law. Barry v. Coca Cola Company, 99 N.J.Super. 270,

239 A.2d 273, 278; Kavanagh v. Butorac (Ind.App.Court), 221 N.E.2d 824, 831; Lipscomb v. Diamiani (Del.Superior Court), 226 A.2d 914, 918; Bentzler v. Braun, 34 Wis.2d 362, 149 N.W.2d 626, 640; Annotation, 15 A.L.R.3d 1428.

In Mortensen v. Southern Pacific Company, 245 Cal.App.2d 241, 53 Cal.Rptr. 851, 853, the court held the failure of an employer to furnish its employee seat belts was not negligence as a matter of law under the Federal Employers' Liability Act, saying the question was for the jury.

In the instant case plaintiff introduced evidence that seat belts are a valuable safety device; that the cost of installation is negligible; and that effective July 1, 1966, seat belts were required in 1966 model (or newer) automobiles. See section 321.445, Code of Iowa. It is conceded this section did not require seat belts in the cab involved in this accident.

Robert Glenn, an Iowa Highway Patrolman, and Dr. George W. Brown (of whom we hear more later in this opinion) testified at length concerning the safety value of seat belts. Both expressed the opinion that plaintiff's injuries would not have been as serious had she worn one. Both gave statistics and referred to various studies and treatises showing seat belts generally are regarded as helpful in preventing or minimizing injuries in the event of a collision.

Almost identical testimony was considered in Mortensen v. Southern Pacific Co., supra, where a physicist and two highway patrolmen vividly described the effect of seat belts in reducing accident fatalities and minimizing injuries. But it was nevertheless held that the question of negligence was for jury determination.

■ Defendant cab company is a common carrier obligated to exercise a high degree of care for the safety of its passengers. Its duty stops just short of insuring their safety. Rozmajzl v. Northland Greyhound Lines, 242 Iowa 1135, 1139, 49 N.W.2d 501,

504; Doser v. Interstate Power Co., Iowa, 173 N.W.2d 556, 558. This duty requires a common carrier to provide and use the best machinery and appliances then known and in general practical use for the safety of passengers. 13 C.J.S. Carriers § 738, page 1389. However it need not adopt and use *every* known safety device.

■ The defendant cab company was under no statutory duty to have seat belts in its cab at the time this accident occurred. We believe the issue of negligence for failing to provide such a safety device was properly determined as a question of fact and not as a matter of law. Therefore the trial court's finding, if supported by substantial evidence, is binding on us. Rule 344(f) (1), Rules of Civil Procedure.

However, plaintiff has another complaint concerning this matter. She says our decision on this point is not decisive because the trial court did not *consider* the negligence of the cab company in failing to furnish seat belts and did not pass on the claim that this failure was a proximate cause of her *injuries* as opposed to proximate cause of the *accident*.

■ We do not believe the trial court's findings are open to this objection.

We believe the only fair conclusion is that the trial court determined liability rested with McIntosh alone under all the issues. If, as plaintiff now contends, the trial court overlooked specific findings on matters vital to plaintiff's cause, then plaintiff had an adequate remedy under rule 179, R.C.P. If plaintiff had requested an enlargement of the findings under that rule, we would not now be asked to assume the trial court ignored one of the important issues in the case, an issue which had been raised by the pleadings and upon which there was voluminous testimony. In the absence of such a request, the trial court's finding of negligence and sole proximate cause settles this question.

But plaintiff argues, even if this be true, the evidence is conclusive and un-

controverted that failure to provide seat belts was negligence which was a proximate cause of her injuries. She insists this is one of the exceptional cases where negligence and proximate cause are *not* jury questions under rule 344(f) (10). She says we should hold as a matter of law both that defendant cab company was negligent and that such negligence was a proximate cause of her injuries.

■ This argument depends upon the force of the expert testimony introduced concerning seat belts and the beneficial effects of their use. It is claimed the trial court was bound by that evidence because defendants offered nothing to refute it; but this is not the law. The trial court was free to reject the expert testimony for two reasons. First, under rule 344(f) (17), R.C.P., a jury question is engendered even by undisputed facts if reasonable minds might draw different inferences from such facts. We do not believe the value of seat belts is so firmly established that reasonable persons could not draw different inferencs from the testimony here. For instance, on cross-examination the highway patrolman admitted that some scientific and legal literature raises doubt about the efficacy of seat belts under some circumstances. See also comment in Barry v. Coca Cola Co., supra, 239 A.2d at page 278, that "there are, at least, some arguments on the counterside that they [seat belts] are not as helpful as some may say." We cannot say here that reasonable men could not draw different inferences from the testimony.

■ Secondly, expert opinion testimony, even if uncontroverted, is not binding on the trier of fact. 31 Am.Jur.2d, Expert and Opinion Evidence, section 183, page 748; Kellerhals v. Kallenberger, 251 Iowa 974, 982, 103 N.W.2d 691, 696; Larew v. Iowa State Highway Commission, 254 Iowa 1089, 1093, 120 N.W.2d 462, 464, and citations; Iowa Development Company v. Iowa State Highway Commission, 255 Iowa 292, 300, 122 N.W.2d 323, 328.

In this last case we said, "Expert testimony may be used as an aid to the trier of the facts, and may be adopted in whole, in part, or not at all. * * * So the court here was not bound to follow the testimony of any of the experts as conclusive, but could equate their opinions not only as to the different valuations given by the several witnesses but with the other evidence in the case."

In the Kellerhals case, supra, we said, "It is well settled that the trier of facts is not absolutely bound by testimony of experts upon values, even when undisputed, but may use his own knowledge and judgment in connection with the testimony."

This same problem was considered in Kavanagh v. Butorac, Ind.App., 221 N.E.2d 824, 830, where an expert testified plaintiff would not have collided with the rear view miror if his seat belt had been properly fastened. In commenting on this testimony the Indiana appellate court said, "However this is an opinion which the trial judge [as the trier of fact] was at liberty to regard favorably, or to disregard utterly."

We hold against plaintiff on all matters raised concerning the seat belt issue.

II. The remaining assignment of error assails the ruling of the trial court in refusing to admit expert testimony of speed offered by Dr. George Brown. Dr. Brown, no stranger to this court, is a highly qualified traffic safety consultant and an assistant professor at the University of Iowa. He holds a bachelor's degree in general science and a master's degree in chemistry. He obtained his doctorate in physiology. He concentrates on problems of motor vehicle transportation as related to accidents and safety. At present he is teaching courses in transportation safety and accident analysis. He has written and published various papers on accident prevention and safety. He has served as a consultant or adviser to various state departments, insurance companies, and private

law firms. He is presently a consultant to the traffic control board of Iowa City.

■ We do not dispute Dr. Brown's impressive qualifications as an expert in his field. However, as we recently pointed out in Karr v. Samuelson, Inc., Iowa, 176 N.W.2d 204, filed April 7, 1970, it is not enough that a witness be *generally* qualified in a certain area; he must also be qualified to answer the particular question propounded. The quotation there from II Wigmore on Evidence, Third Ed., sections 555–562, page 634, is particularly applicable here and we repeat it. "The capacity [to testify as an expert] *is in every case a relative one, i. e.,* relative *to the topic about which the person is asked to make his statement.* The object is to be sure that the question to the witness will be answered by a person who is fitted to answer it. His fitness, then, is a fitness to answer on that point. He may be fitted to answer about countless other matters, but that does not justify accepting his views in the matter in hand. Conversely, if he is skilled enough to acquire knowledge on the matters in hand, it is immaterial that he is not skilled upon any or every other matter."

In Karr we emphasized what we had recently said in Dougherty v. Boyken, Iowa, 155 N.W.2d 488 and Hedges v. Conder, Iowa, 166 N.W.2d 844, concerning the qualifications of an expert to answer *particular* questions under *particular* circumstances.

We reiterated there, too, our statement in Robeson v. Dilts, Iowa, 170 N.W.2d 408, 413:

"We are committed to a liberal rule on the admission of opinion evidence. The matter rests largely within the discretion of the court."

We pointed out, however, that liberality does not mean an expert opinion may be admitted if it is based on nothing more substantial than conjecture or guess.

■ We cannot escape the conclusion that under the facts shown by this record

Dr. Brown's testimony as to speed would have been simply that—conjecture or guess. Its exclusion was well within the proper exercise of the trial court's discretion, and we affirm the ruling.

Dr. Brown's specific task was to fix the speed of the Yellow Cab immediately prior to the accident. We limit our discussion to his qualifications to do so under the particular facts available to him. Dr. Brown had never visited the accident scene. He had not examined either of the vehicles involved in the accident. He did not hear the testimony of any of the other witnesses. He undertook to estimate the speed of the cab entirely from five pictures of the cars and the accident scene taken immediately after the collision and before the cars had been moved. We quote from plaintiff's offer of proof after the trial court had sustained an objection to the speed testimony:

"We'll prove by this witness, Your Honor, *from the reasonable construction and assumptions which can be drawn from these photographs,* including but not limited to, the damage to each of the vehicles, the overlap involved in the collision, the direction and length of the trail of radiator fluid from the Plymouth automobile, the condition of the front end of both vehicles with respect to the matter of the turning of the wheels or the possibility of turning of the wheels, and the distance traveled by both vehicles and their respective weights, that if the Plymouth automobile were traveling at a speed of 20 miles per hour [concerning which there was evidence] and in order for it to be hurled backwards the distance that it was and for the Checker, Your Honor, with its weight to continue forward the distance that it did, that the Checker automobile would have to be traveling at a speed of 47 miles per hour at the time of the collision.

" * * * Now, Your Honor, our offer of proof is based purely on mathematics, purely on physics that *when an oncoming mass meets another oncoming mass * * **

and you have their relative weights and you know the distances, weights of the respective masses afterwards, that the speed of one can be computed if the speed of the other is known; and that's what we would expect to prove with respect to the speed of the Checker cab." (Emphasis supplied.)

This is not the usual case which comes to us on the admission or exclusion of expert testimony. Ordinarily we are asked to decide whether a hypothetical question either included matters which were improper or excluded matters which were necessary to a reliable and fair expression of opinion. Here our problem rather is to decide if there were *sufficient facts at all* upon which the witness could express an opinion of speed. The trial court's ruling obviously was based on the conclusion there was insufficient data by which such an opinion could be reasonably fixed.

It is noteworthy that many of those factors usually present to help an expert estimate speed are lacking here. There are no skid marks because neither car made any application of brakes prior to impact. We have recognized the importance of such marks several times. Hardwick v. Bublitz, 254 Iowa 1253, 1257, 119 N.W.2d 886, 888; Karr v. Samuelson, Inc., Iowa, 176 N.W.2d 204, filed April 6, 1970. While we said in the Bublitz case the absence of skid marks does not *necessarily* prevent an estimate of speed by an expert witness, it is apparent such evidence is of great importance and its absence requires a showing of other circumstances which would render an opinion equally dependable. We find no such circumstances here.

The importance of the expert's reliance on some acceptable criteria is pointed out in the Hedges v. Conder case, supra, where we set out the necessity of showing the coefficient of friction, type of pavement, condition of the tires and other circumstances. None of these is available here because there is no braking factor. These ordinary indications of speed are not therefore present. But that does not mean the witness can testify with *no* dependable factors to support him.

Dr. Brown said he must know four things in order to express an opinion as to speed: point of impact; distance and direction traveled after impact; weight and direction of impact; and amount of damage. Assuming this to be true, arguendo, we do not believe these prerequisites were established by the evidence before us.

Of the four requirements which Dr. Brown lays down, perhaps two may be accepted as satisfactorily established, although we can reach this conclusion only by rather questionable evidence. For instance the point of impact was fixed "approximately" by the opinion testimony of others, and the direction of travel after impact may be inferred from the location of the cars with reference to the approximate point of impact. We may also assume the weight of the vehicles was adequately shown, although Dr. Brown discounts the weight of the occupants of one vehicle and does not know the weight of the occupants or contents of the other.

This brings us to the remaining circumstances which we find totally unsupported by any credible evidence. There is nothing to show the distance traveled by the vehicles after they collided. Dr. Brown is asked to compute this distance *from the pictures* by relating the impact point to a no parking sign on one side of the street and the curb on the other side of the street. The investigating officers made certain measurements at the scene but they did not measure—or at least they did not testify concerning such measurement—the distance from the approximate point of impact to where the cars came to rest. Dr. Brown sought to supply this vital information by computations made from pictures which might very well accurately show the general scene and appearance of the automobiles in question but were totally inadequate as a basis for precise measurements in feet and inches.

There is perhaps a more serious objection to the facts relied on by Dr. Brown. It lies in the assumption that this was a head-on collision. The evidence shows this was not so. It was a collision caused by one car making a left turn into the other. Damage to both is principally front end damage. However, the pictures show without question that the cab was not damaged on the right front. The right fender and the right headlight are intact. The brunt of the impact was at the left front fender and left center, but no one knows the angle of impact. We take it this angle is what Dr. Brown means when he says he must know the direction of impact. It appears obvious the physical force involved to produce a certain result is different if two vehicles meet head-on than if they engage each other by only a glancing blow. A sideswipe collision might impede the progress of the vehicles very little. A direct head-on meeting might stop them in their tracks. Between these two extremes the possibilities as to angle of impact and the variable results thereof are almost limitless. Plaintiff's theory as shown by his offer of proof is that the cars met head-on and that the Plymouth was "hurled back." The record does not bear her out in either of these premises.

Finally, Dr. Brown says he must know the damage to the vehicles in order to form his opinion. Surely this cannot mean that a picture of the *exterior* damage is sufficient. The pictures show a broken windshield, damage to the front end, and a broken steering wheel. Is this the damage which Dr. Brown says is essential to his opinion? What of damage to the frame and understructure of the car? If speed is to be based partially on the damage done to the vehicles, that damage must be ascertained by something more than looking at a picture of the exterior of the automobile.

No case has been cited to us which is factually similar to the one now before us. However we find substantial support for the views here expressed in Twidwell v. Davidson, 54 Wash.2d 75, 338 P.2d 326, 329–332; Stephanofsky v. Hill, 136 Conn. 379, 71 A.2d 560, 561; Kale v. Douthitt, 4 Cir., 274 F.2d 476, 480–483 (dealing particularly with evidence as to the angle of impact); Levine v. Remolif, 80 Nev. 168, 390 P.2d 718, 719–721 (holding that a picture of a damaged vehicle was insufficient to permit an opinion of speed based on damage to the vehicles); Anderson v. Broome, Tex.Civ.App., 233 S.W.2d 901, 907; Cambell v. Barlow, 274 Ala. 627, 150 So.2d 359; Oyster v. Dye, 7 Wash.2d 674, 110 P.2d 863; Faris v. Burroughs Adding Machine Co., 48 Idaho 310, 282 P. 72; Annotation, 93 A.L.R.2d 287.

Plaintiff puts some reliance on Woyak v. Konieske, Minn., 54 N.W.2d 649, where a witness was permitted to testify solely from pictures that an automobile was standing still rather than moving at the time it was struck. As the Minnesota court itself pointed out, that opinion is not authority for the proposition that such pictorial evidence would permit testimony concerning the speed of moving vehicles.

We hold the trial court was correct in excluding the proffered testimony of Dr. Brown on the question of speed.

We find no merit in plaintiff's assignments of error, and the judgment of the trial court is affirmed.

Affirmed.

All Justices concur.