**Gordon A. GANRUD and Ruth E. Ganrud, Appellants,**

v.

**Bernard Andrew SMITH, d/b/a Smith Trucking Company, Appellee.**

**No. 55211.**

Supreme Court of Iowa.

March 28, 1973.

Nelson & Fassler, Cedar Rapids, for appellants.

Nolan, Lucas & Nolan, Iowa City, for appellee.

Heard before MOORE, C. J., and MASON, RAWLINGS, HARRIS and McCORMICK, JJ.

MOORE, Chief Justice.

This is a law action by plaintiff, Gordon A. Ganrud, for personal injury damages and by his wife, Ruth, for loss of consortium, arising out of a head-on collision between a semi truck in which Ganrud was a sleeping passenger and a semi truck owned by defendant and driven by his employee Willis Bible. Plaintiffs have appealed from judgment on jury verdicts for defendant.

Plaintiffs' assigned errors are directed at alleged erroneous rulings by the trial court on admission of opinion evidence given by defendant's two witnesses, Dr. George W. Brown and William E. Billings. We consider each assignment, infra, in the order asserted.

The factual situation here involved is the same as that in Berghammer v. Smith, Iowa, 185 N.W.2d 226, although the problems on this appeal are entirely different.

Ganrud was employed by Admiral Merchants Motor Freight (Admiral) as a truck driver. He had been regularly assigned to a round-trip route between St. Paul, Minnesota and St. Louis, Missouri. He worked regularly with a fellow employee and co-driver, John F. Berghammer. Usually while one drove the other slept in the sleeper cab.

About 2:45 A.M., September 27, 1966 the Admiral truck was proceeding north on U. S. Highway 218, south of Hills, Iowa. Berghammer was driving. Ganrud was sleeping in the cab. Berghammer testified that while crossing a bridge, he noticed the southbound oncoming tractor-trailer rig owned by defendant and driven by Willis Bible. Approaching the curve in the road north of the bridge, Berghammer stated the other truck began to cross into the east, or northbound, lane of the highway. Berghammer said he took evasive action, pulling the Admiral truck as far onto the right shoulder as he could without tipping over. He said he began to realize the southbound truck was now completely in the northbound lane, and as the vehicles drew quite close (5–10 feet), Berghammer pulled the wheel hard to the left to attempt to avoid a collision. However the vehicles collided and with considerable force. Berghammer testified his vehicle was on the east side of the center line when the two vehicles collided.

As a result of the collision defendant's tractor was torn loose from the trailer and the cab completely destroyed. The Admiral trailer was ripped open and the cab torn from the tractor. The load of merchandise from the Admiral trailer was spread on the highway, shoulders and ditches. The location of the various parts of the vehicles on and off the highway are clearly shown by photographs taken soon after the accident. They are undisputed in the record.

Defendant's driver, Bible, was killed instantly. Berghammer received serious personal injuries. He was knocked unconscious and remained so for more than 20 hours. Ganrud was also rendered unconscious, received serious personal injuries and was hospitalized for over a month.

In addition to witness Berghammer, plaintiffs called two highway patrolmen, Brian Thompson and Blaine Goff who had investigated the accident before either of the vehicles had been removed. Thompson had arrived before either of the injured or Bible were removed. Goff arrived about a half hour later. Both Thompson and Goff stated their opinions, based upon their experience, training and personal examination of the accident scene, that the vehicles collided in the east, or northbound lane of traffic. Other evidence submitted by plaintiffs is not material to the appeal questions.

Defendant produced two experts at trial. Dr. George W. Brown, a physiologist and accident reconstructionist from the University of Iowa and William E. Billings, an accident reconstruction specialist from Cleveland, Ohio. The expression of their opinions, over plaintiffs' objections, gives rise to questions presented to us.

I. As all plaintiffs-appellants' assigned errors concern the admission of opinion testimony, the following preliminary statements of the applicable legal principles should be made. The whole subject of the use of expert testimony is exhaustively discussed in Grismore v. Consolidated Products Co., 232 Iowa 328, 5 N.W.2d 646. A recent coverage of the subject is found in 19 Drake L.Rev. 245, "Opinion Evidence in Iowa."

■ Opinion testimony will be allowed if it is of a nature that it will aid the jury in determining the case and is based upon some special training, experience or knowledge of the witness in respect to the matter under investigation. Greenwell v. Meredith Corporation, Iowa, 189 N.W.2d 901, 908; Bernal v. Bernhardt, Iowa, 180 N.W. 2d 437, 438, 439; McCrady v. Sino, 254 Iowa 856, 862, 118 N.W.2d 592, 595.

■ Expert testimony is not admissible unless the witness is shown to be qualified and the facts upon which he bases his opinion are sufficient to enable a witness so qualified to express an opinion which is more than a mere conjecture. Hedges v. Conder, Iowa, 166 N.W.2d 844, 857; Hardwick v. Bublitz, 254 Iowa 1253, 1259, 119 N.W.2d 886, 889. It is not enough that a witness be generally qualified in a certain area, he must also be qualified to answer the particular question propounded. Tiemeyer v. McIntosh, Iowa, 176 N.W.2d 819, 824; Karr v. Samuelson, Iowa, 176 N.W.2d 204, 210.

■ The receipt of opinion evidence, lay or expert, rests largely in the sound discretion of the trial courts and we will not reverse its ruling absent manifest abuse of that discretion to the prejudice of the complaining party. Olson v. Katz, Iowa, 201 N. W.2d 476, 482; Marean v. Petersen, 259 Iowa 557, 563, 564, 144 N.W.2d 906, 910; Grismore v. Consolidated Products Co., 232 Iowa 328, 342, 5 N.W.2d 646, 654. See also 31 Am.Jur.2d. Expert and Opinion Evidence, § 3, p. 497. Of course, the discretion exercised in admitting or excluding expert or opinion testimony is not unlimited, but must be a legal one based on sound judicial reason. Sauer v. Scott, 176 N.W. 2d 140, 144; Dougherty v. Boyken, 261 Iowa 602, 607, 608, 155 N.W.2d 488, 491. The discretion of the trial court ceases where the record shows as a matter of law the witness is not qualified or the facts upon which the opinion is based are not sufficiently stated by the witness. Bernal v. Bernhardt, Iowa, 180 N.W.2d 437, 439; Hedges v. Conder, Iowa, 166 N.W.2d 844, 857, 858.

■ We are committed to a liberal rule on the admission of opinion testimony. Tiemeyer v. McIntosh, supra, Iowa, 176 N.W.2d 819, 824. Our reasoning is thus stated in Bengford v. Carlem Corporation, Iowa, 156 N.W.2d 855, 865, 866:

"The admission of opinion evidence rests largely in the sound discretion of the court and considerable leeway is allowed in this field of evidence for the reason that no matter how the opinion

question is phrased or formulated, it remains an opinion which the trier of facts is at liberty to reject. Therefore only in clear cases of abuse would admission of such evidence be found prejudicial. (Citations)."

■ II. Plaintiffs first assert the trial court erred in the admission of Dr. Brown's opinion testimony that Berghammer probably suffered loss of memory of events occurring immediately before the collision, i. e., retrograde amnesia. Plaintiffs objected to Dr. Brown answering the hypothetical question on the grounds it called "for the opinion and conclusion of the witness on matters he has not been shown qualified or competent to testify to * * *." They argue here Dr. Brown's testimony should have been excluded because he is not a physician licensed in this or any other state.

Admittedly Dr. Brown is not a medical doctor or physician. He however testified at length regarding his qualifications. He received a B.A. in general science from the University of Iowa in 1940. In 1942 he received a M.S. degree in chemistry from the University of Iowa, majoring in metallurgy. He then entered the Army, serving in the Chemical Warfare Service until 1946. He returned to Iowa University to do advance work. From 1946–48 he was a research assistant in metallurgy and chemistry. He worked on his Ph.D. degree in physical chemistry but changed fields to physiology and obtained a Ph.D. in that field in 1952. Some of the physiology courses he passed were also required courses for medical students. Prior to receiving his Ph.D., Dr. Brown worked at Wright-Patterson Air Force Base as a research physiologist. His doctoral thesis was on problems and mechanics of concussion and brain damage associated with aircraft accidents.

After receiving his Ph.D. he spent a year in the Department of Surgery further studying neurological problems associated with head injury. He made a study of the relationship and effect of concussion upon human memory. He has written articles in this area which have been published in recognized medical journals.

The question posed is whether an expert need be a licensed physician to give opinion testimony of the probability of loss of memory following head injury and a long period of unconsciousness.

No case has come to our attention which is factually the same as the case at bar. Directly in point is this from Jones on Evidence, (6th ed.), § 14.13, p. 619:

"Like licensed experts in other fields the fact that a person is licensed to practice in a branch of the healing arts carries a presumption of qualification to testify as an expert at least in his given field. But licensing does not necessarily settle the matter conclusively, as the necessity of specialization may be shown where the matter in issue calls for it. Nor is the lack of license necessarily a bar to accepting the person as a witness, as learning and experience may provide the essential elements of qualification."

In support of the last sentence in the above quotation see Crews v. Director, Patuxent Institution, 245 Md. 174, 225 A.2d 436, 438, (college instructor of psychiatry, with wide experience, held qualified to testify to defendant's mental condition); Fox v. Peninsular White Lead & Color Works, 92 Mich. 243, 52 N.W. 623, 625, (chemist with experience with Paris green permitted to testify regarding its effect on employees). See also Lyons v. Farm P. M. Ins. Assn., 188 Iowa 506, 510, 176 N.W. 291, 293, where non-veterinarian butcher was permitted to testify, based on past experience, that certain animal hides were burned by lightning and Wisecarver v. Long & Camp, 120 Iowa 59, 63, 94 N.W. 467, 469, where, based on past experience, a non-veterinarian was permitted to testify regarding the condition of internal organs of a dissected horse.

■ We do not find the trial court abused its discretion in allowing Dr.

Brown's opinion testimony to be submitted to the jury. Its credibility of course was for the jury. Bengford v. Carlem Corporation, supra; Dougherty v. Boyken, supra, 261 Iowa at 609, 155 N.W.2d at 492. Plaintiffs' first assigned error is untenable.

III. Plaintiffs next argue Dr. Brown's testimony should not have been permitted to express an opinion in contradiction of Berghammer's positive testimony. Such a ground was not included in plaintiffs' objection to the hypothetical question propounded to Dr. Brown.

Reversible error may not be predicated upon an objection to a hypothetical question which does not specifically tell the court the ground upon which it is based. Pastour v. Kolb Hardware, Inc., Iowa, 173 N.W.2d 116, 124; In Re Estate of Ronfeldt, 261 Iowa 12, 27, 152 N.W.2d 837, 846, and citations in each.

Thus we have a contention raised for the first time on appeal. This court will not consider such an issue. Quad County Grain, Inc., v. Poe, Iowa, 202 N.W.2d 118, 119, and citations.

IV. Both Dr. Brown and Billings testify at great length establishing education, past experience and specific qualifications in the area of accident investigation and reconstruction. Each had testified previously in many courts as experts. Plaintiffs raise no question of their qualifications in these areas. Plaintiffs do argue however that the trial court erred in permitting Dr. Brown and Billings to express their opinions the point of impact was in the west or southbound lane of traffic. They assert there was no showing the jury required the assistance of such expert testimony. As we understand plaintiffs' position they contend the testimony of Berghammer obviates the use of any aid to the jury in determining the point of impact.

Obviously plaintiffs did not take this position during presentation of their case in chief. They introduced the expert testimony of highway patrolmen Thompson and Goff to aid the jury on the question of point of impact.

In Smith v. Cedar Rapids Country Club, 255 Iowa 1199, 1210, 1211, 124 N.W.2d 557, 564, we say:

" * * * [I]t is not the province of the court in such a case to pass upon the credibility of the several witnesses and say one's opinion is more likely to be correct than another. The jury is to determine the weight to be given this evidence. Noyes v. Des Moines Club, supra, 178 Iowa 815, 818, 160 N.W. 215."

The evidence, including several photographs taken soon after the collision, show both vehicles were demolished in the accident. Parts of the vehicles and merchandise from Admiral's semi came to rest on all portions of the pavement as well as on both shoulders and in the ditches.

We do not find the trial court abused its discretion in ruling the facts justified use of expert opinion testimony to aid the jury in determining the point of impact.

V. Plaintiffs also assert the trial court erred in permitting Dr. Brown and Billings to state their opinions as to place of impact as such was based in part upon the opinions of others and hearsay.

Plaintiffs do not argue Brown referred to any opinions of others or that his testimony was based on hearsay. The record does not so disclose.

Plaintiffs' objection to Billings' testimony did not include the ground that it was based on the opinion of others. Plaintiffs attempt to rely on an objection first raised on appeal. As we point out in division III, supra, we will not consider such an issue.

VI. Plaintiffs argue Billings' testimony was based in part on hearsay. Billings attended the trial and heard all of plaintiffs' evidence in chief, except medical. He had conducted an extensive pretrial investigation of the accident. Previously and at

trial he had studied the many photographs of the accident scene.

■ The thrust of plaintiffs' assigned error now being considered is that Billings should not have been permitted to consider the testimony he heard on trial which described the accident scene immediately after the collision as it was hearsay. It was made a part of the hypothetical question only by general reference. That testimony was not in dispute. The photographs in evidence clearly support said testimony.

In Ipsen v. Ruess, 241 Iowa 730, 736, 41 N.W.2d 658, 662, we quote the following from Quimby v. Greenhawk, 166 Md. 335, 338, 171 A. 59, 61:

> " '* * * [W]hile the better practice is to incorporate in a hypothetical question all the facts on which an expert witness is asked to give an opinion, yet the hearing or reading of the testimony is accepted as an imperfect substitute for the formal hypothetical question in furnishing the data for inference by the expert witness.' "

In Ipsen we affirm the trial court's ruling allowing a medical expert to express an opinion based in part on medical testimony he had heard. For a like holding see Ingwersen v. Carr & Brannon, 180 Iowa 988, 164 N.W. 217.

The editor in 31 Am.Jur.2d, Expert and Opinion Evidence, § 39, pp. 542, 543, states:

> "* * * [M]ost of the authorities support the view that it is within the trial court's discretion to permit an expert witness to give an opinion based upon testimony which he has heard given by other witnesses without a hypothetical statement of the facts, where the witnesses are few and the testimony is not voluminous, complicated, or conflicting. * * *.

> "As indicated above, the allowance of opinion testimony based on evidence which the witness heard is, at most, a matter of discretion. * * *."

See also 32 C.J.S. Evidence, § 554; Jones on Evidence, (6th ed.) § 14.23; Annot. 82 A.L.R. 1460.

■ We hold the trial court had discretion to determine whether Billings be allowed to consider the undisputed testimony which he had heard and there was no abuse of that discretion.

VII. We have considered plaintiffs' claim they should have been granted a new trial and that the court erred in permitting Billings to engage in long narrations of the reasons for his opinion. We find them without merit.

We find no reversible error. The judgment appealed from is affirmed.

Affirmed.