Lisa A. **GUIDICHESSI,** and Patrick W. O'Bryan, as Conservator for Lisa A. Guidichessi, Plaintiffs–Appellees,

v.

ADM MILLING CO., A DIVISION OF ARCHER DANIELS MIDLAND COMPANY, Defendant–Appellant,

and

Chicago and Northwestern Transportation Company, Defendant.

No. 94–1981.

Court of Appeals of Iowa.

June 27, 1996.

Gregory A. Witke and Elizabeth A. Raymond of Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, for defendant–appellant.

Peter W. Berger, Des Moines, for plaintiffs–appellees.

Heard by SACKETT, C.J., HABHAB, J., and SCHLEGEL, Senior Judge, but decided by SACKETT, C.J., and HABHAB, CADY, HUITINK, and VOGEL, JJ.

HABHAB, Judge.

On September 6, 1991, plaintiff Lisa Guidichessi arrived at her place of employment at approximately 8:00 a.m. Her employer concluded she was intoxicated and decided to drive her home. Guidichessi told her employer she had a friend who worked at the Drake Inn and could get a room to sleep it off. Her employer dropped her off at the hotel.

At approximately 9:30 a.m., Guidichessi was driving her friend's car eastbound on East Twentieth Street in Des Moines toward multiple railroad tracks leased by defendant ADM Milling Company. The tracks are owned by the Chicago and Northwestern Railroad. As she approached the tracks, she stopped for an ADM flagman who gave her a hand signal to stop. The ADM flagman then gave the signal to another ADM employee to pull a cable and winch that pulled several waiting railroad cars across the street.

As the flagman turned away from Guidichessi to give the signal, Guidichessi drove forward. The flagman attempted to waive off Guidichessi, but Guidichessi continued on. The flagman was unable to signal the cable man to stop the cable from rising. Guidichessi's car collided with the cable and her head was struck by the cable.

Guidichessi suffered a depressed skull fracture and significant injuries to the left frontal lobe of the brain. Surgeons had to remove a sizable portion of her left frontal lobe. Two rows of titanium plating and screws were imbedded in her skull. Guidichessi suffers from seizure activity, severe depression, chronic headaches, profound memory loss, numbness, loss of appetite, severe mood swings, and confusion. She has also suffered severe damage to her ability to organize, plan, and complete simple everyday tasks. Guidichessi continues to take five different medications for her various illnesses and will not be able to live independently.

Guidichessi filed a petition based on negligence against ADM. She later added Chicago and Northwestern Railroad as a defendant after learning it owned the tracks in question. At trial, Guidichessi emphasized the flagman had no specific training other than on-the-job experience. Guidichessi also stressed the flagman was not wearing an orange vest or any other indication of authority. She additionally emphasized ADM did not employ a system whereby the employees charged with moving the railroad cars could contact each other in case of an emergency. She claimed the flagman could have waited another ten to fifteen seconds after she cleared the intersection before raising the cable. ADM pointed out that Guidichessi had a blood alcohol content of .14 at the time of the accident.

The jury returned a unanimous verdict in Guidichessi's favor in the amount of $4,852,-919. The jury allocated fault at forty-eight percent for Guidichessi, forty-nine percent for ADM, and three percent for Chicago and Northwestern Railroad. ADM filed motions for directed verdict and judgment notwithstanding the verdict which the district court denied. The district court also denied ADM's motion for new trial and for remittitur.

ADM appeals.

**I. Negligence Instruction.** ADM contends the district court erred in submitting jury instruction number fourteen. Specifically, ADM contends the instruction misstated the law and imposed an improper duty upon ADM.

■ **A. Jury Instruction Fourteen.** Jury instruction number fourteen states:

The Plaintiff claims Defendant ADM Milling Co. was at fault because of Defendant's negligence. This ground of fault has been explained to you in other instructions.

In order to recover, the Plaintiff must prove all of the following propositions:

1. The Defendant was at fault. In order to prove fault, the Plaintiff must prove this Defendant was negligent in one or more of the following ways:

   a) By failing to erect warning signs warning motorists that a cable may be across the road;

   b) By failing to have the flagman wear orange vests, hard hats, and/or carry stop signs;

   c) By failing to mark or paint the cable;

   d) By failing to have their flagman and winch operator in communication by use of radios.

2. The Defendant's fault was a proximate cause of the Plaintiff's damage.

3. The amount of damage.

If the Plaintiff has failed to prove any of these propositions, the Plaintiff is not entitled to damages. If the Plaintiff has proved all of these propositions, you will consider the Defendant's defense and the defense of comparative fault as explained in other instructions.

ADM disputes the specifications listed in 1(a)-(d). The instruction is derived from Iowa Civil Jury Instruction 700.1.

Generally, negligence is conduct which falls below the standard established by law for the protection of others against unreasonable risks of harm. *Knake v. King*, 492 N.W.2d 416, 417 (Iowa 1992); *Ewoldt v. City of Iowa City*, 438 N.W.2d 843, 844 (Iowa App.1989). "The threshold element for a negligence action is a duty or standard of care owed by the actor to the victim." *Knake*, 492 N.W.2d at 417. A particular relationship between the actor and victim is not an absolute requirement in establishing a legal duty or standard of care, especially when the consequences of a negligent act causes harm to another. *Keller v. State*, 475 N.W.2d 174, 179 (Iowa 1991). Generally, the issue is whether the defendant acted as would a reasonably careful person under like circumstances. *Brichacek v. Hiskey*, 401 N.W.2d 44, 47 (Iowa 1987). The question whether a party's conduct is reasonable is usually a fact question for the jury rather than a question of law. *Id.*

Specifications of negligence in jury instructions should identify either (1) a certain thing the allegedly negligent party did which that party should not have done, or (2) a certain thing that party omitted to do which should have been done under the legal theory of negligence which is applicable. *Rinkleff v. Knox*, 375 N.W.2d 262, 266 (Iowa 1985). Guidichessi's legal theory of negligence appears to be that ADM's method of pulling the railroad cars produced an unreasonable danger of injury to the public. This theory is consistent with and is supported by case law which has stated "conduct that produces an unreasonable danger of injury to others can constitute negligence." *Fiala v. Rains*, 519 N.W.2d 386, 388 (Iowa 1994).

"Jury instructions should be formulated so as to require the jury to focus on each specification of negligence *that finds support in the evidence.*" *Bigalk v. Bigalk*, 540 N.W.2d 247, 249 (Iowa 1995) (emphasis added). While Guidichessi was entitled to a jury instruction which set forth her specific allegations of negligent conduct, she was only entitled to the submission of those specifications for which there was sufficient evidence to generate a jury question.

The purpose of requiring the jury to consider factual specifications is to limit the determination of facts or questions arising in negligence claims to only those acts or omissions upon which the court has had an opportunity to make a preliminary determination of the sufficiency of the evidence to generate a jury question. Each specification should identify either a certain thing

the allegedly negligent party did which that party should not have done, or a certain thing that party omitted that should have been done, under the legal theory of negligence that is applicable.

*Coker v. Abell–Howe, Co.,* 491 N.W.2d 143, 151 (Iowa 1992).

In objecting to jury instruction number fourteen, ADM specifically challenged the sufficiency of the evidence to warrant submission of the specific allegations of negligence contained therein. We have carefully reviewed the record and find there was insufficient evidence to warrant submission of the flagman's failure to wear a hard hat as one of the plaintiff's specifications of negligence. At no point did the plaintiff offer any evidence, expert or otherwise, to indicate the exercise of ordinary care by a reasonably careful person would have required the flagman to wear a helmet. Given the erroneous submission of this specification of negligence to the jury, we reverse and remand for a new trial.[1]

Given that ADM's remaining claims might arise again on retrial, we will address them here.

■ *B. ADM's Proposed Instruction Concerning Hazardous Crossings.* ADM proposed an instruction on extra-hazardous railroad crossings. The trial court declined to give that instruction. We agree with the trial court there was no evidence presented to warrant the giving of the proposed instruction. Further, ADM's proposed instruction pertains to "sounding the train horn and bell." The evidence is clear there was not a train to sound its horn and bell, for there were only three stationary railroad cars without a locomotive at this grade crossing. The trial court did not err in this respect.

■ II. *Expert Testimony.* ADM contends the district court erred in allowing expert testimony from Dr. Berg concerning the causal factors or ultimate issue of causa-

tion. ADM argues this testimony was improper because he lacked the requisite reasonable basis in order for him to testify as to issues of causation. Evidentiary issues are reviewed under an abuse of discretion standard. *Ladeburg v. Ray,* 508 N.W.2d 694, 695 (Iowa 1993).

Iowa Rule of Evidence 702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

"Rule 702 thus codified Iowa's existing 'liberal rule on the admission of opinion testimony.'" *Hutchison v. American Family Mut. Ins. Co.,* 514 N.W.2d 882, 885 (Iowa 1994) (quoting *Ganrud v. Smith,* 206 N.W.2d 311, 314 (Iowa 1973)). Our supreme court, in *Hutchinson,* quoted a comment made by the United States Supreme Court stating, "the Rules of Evidence—especially Rule 702—do assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579, 597, 113 S.Ct. 2786, 2799, 125 L.Ed.2d 469, 485 (1993). "The trial judge has the task to assess 'whether the reasoning or methodology underlying the testimony is scientifically valid and ... whether that reasoning or methodology properly can be applied to the facts in issue.'" *Hutchinson,* 514 N.W.2d at 888 (quoting *Daubert,* 509 U.S. at 592–93, 113 S.Ct. at 2796, 125 L.Ed.2d at 482).

The expert testimony at issue was given by Dr. Berg, who Guidichessi describes as an expert in grade crossing. ADM is critical of Dr. Berg because he does not have any formal training in either psychology or psychiatry. However, when the testimony is taken as a whole, we view Dr. Berg's testimony as concerning factors making ADM's crossing unsafe. Dr. Berg was not being called by Guidichessi to testify regarding medical or

---

1. On remand, it might be advisable for the trial court to re-word instruction number fourteen to clarify to the jury it must determine whether any of plaintiff's allegations of negligence actually constitute negligence as defined in an earlier jury instruction. Without such a reminder, it is possible the jury could simply assume the alleged conduct is negligent and it merely needs to find the existence of such conduct to find defendant at fault.

psychological evidence. The overall focus of the testimony was on the procedures to be used in a safe crossing and whether there was a basis for allowing such testimony from Dr. Berg. We find no abuse of discretion by the district court in allowing the testimony of Dr. Berg.

### III. *Ms. Guidichessi's Past Driving Record.* ADM contends the district court erred in failing to admit Guidichessi's entire past driving record into evidence. ADM argues this evidence should have been admitted because it was highly probative evidence on the issues of Guidichessi's medical condition and damages. Once again, we note evidentiary issues are reviewed to determine whether the district court abused its discretion. *Ladeburg,* 508 N.W.2d at 695.

We find the past driving record of Guidichessi, specifically her record of operating while intoxicated convictions, to have a low probative value in this case. The question of whether Guidichessi was intoxicated at the time of the accident was not seriously at issue. Further, we find the evidence was not necessary for one of the reasons stated by ADM in its brief. Guidichessi's past medical records, her substance abuse treatments, her suicide gestures, and her employment records were all available to the jury. Guidichessi's prior condition and behavior was repeatedly testified to by family members and by medical and psychological witnesses. An expert for ADM, Dr. Schwartz, provided a report which summarized much of Guidichessi's pre-accident history.

ADM also contends the driving record is relevant to the issue of damages. ADM argues the jury was unable to accurately assess her damages due to the exclusion of the evidence. ADM asserts the jury has a number of factors to consider in assessing damages, including Guidichessi's "sobriety or intemperance." *See Schmitt v. Jenkins Truck Lines, Inc.,* 170 N.W.2d 632, 655 (Iowa 1969). We find, in light of the other evidence discussed above, the jury had more than sufficient evidence to assess Guidichessi's damages.

We conclude the district court did not abuse its discretion in failing to admit into evidence Guidichessi's past driving record.

**REVERSED AND REMANDED.**

HABHAB, HUITINK and VOGEL, JJ., concur.

CADY and SACKETT, JJ., specially concur.

STREIT, J., takes no part.

CADY, Judge (specially concurring).

I concur with the majority opinion in its entirety and write separately only to express my belief that instruction fourteen also imposed an extraneous duty of care which the defendant did not have toward plaintiff. This extraneous duty of care resulted in prejudice to defendant.

Actionable negligence must be based upon a duty to prevent injury to the person injured or the class of persons of which the injured person was a member. *Sankey v. Richenberger,* 456 N.W.2d 206, 208–09 (Iowa 1990). Thus, the failure to perform a duty does not constitute actionable negligence unless it results in injury to one for whose protection the duty was imposed. 57A Am. Jur.2d *Negligence* § 101 (1989).

In this case, I find nothing to suggest defendant's duty to provide hard hats for its employees was imposed to protect motorists or any other persons like plaintiff. I believe the duty was imposed to protect the worker. Moreover, I can find no justification for extending the duty to protect motorists. Certainly, our appellate courts have never established such a duty. Moreover, it would be extremely unlikely that the safety of motorists would be meaningfully affected by the imposition of such a duty. I would hold plaintiff was not within the orbit of duty imposed on the defendant to provide hard hats, and the trial court erred in including such a duty in its charging instruction.

SACKETT, C.J., joins this special concurrence.